STATE OF RHODE ISLAND
PROVIDENCE, SC

SUPERIOR COURT

Champlin's Realty Associates :

v. : C.A. NO: PC06-1167

Donald L. Carcieri, Governor of the :
State of Rhode Island, Kenneth K. McKay IV, :
Chief of Staff to the Governor of the :
State of Rhode Island and John Does, 1 through 5 :

## FIRST AMENDED COMPLAINT

1. Plaintiff, CHAMPLIN'S REALTY ASSOCIATES, is a Rhode Island corporation with a principal place of business in New Shoreham, Rhode Island.

2. Plaintiff, CHAMPLIN'S REALTY ASSOCIATES is an applicant for a marina expansion before the Rhode Island Coastal Resources Management Council; Docket No: 2003-05-155.

3. Defendant, Donald L. Carcieri, is the Governor of the State of Rhode Island and is sued in his official capacity.

4. Defendant, Kenneth K. McKay IV is the Chief of Staff for the Governor of Rhode Island and is sued in his official capacity.

5. Defendants, John Does 1 through 5, on information and belief engaged in a conspiracy with the named defendants to defeat plaintiff's application before the Coastal Resources Management Council.

6. The Coastal Resources Management Council is an agency of state government and is the principal mechanism for management of the state's coastal resources.

7. Plaintiff's application before the Coastal Resources Management Council seeks an expansion of its existing marina facility located in the Great Salt Pond in the Town of New Shoreham.

8. Plaintiff's marina is located in Type III waters that specifically are designated for marinas and recreational boating activity.

9. Marinas have been designated by the General Assembly to be a use consistent with the public trust.

10. Plaintiff's application to expand its marina is a contested case in accordance with the Administrative Procedures Act, G.L. § 42-35-1(c), and the Management Procedures adopted by the Coastal Resources Management Council.

11. The Coastal Resources Management Council, in deciding a contested case is acting in a quasi-judicial capacity.

12. When acting as a quasi-judicial body, the members of the Coastal Resources Management Council must exercise their statutory authority with strict impartiality, mindful of the due process protections owed to the parties who appear before them.

13. According to the Coastal Resources Management Council, when it functions in a quasi judicial capacity, is serves "as a state administrative agency which functions much like a court as it hears testimony, receives evidence, and makes a decision based upon the record, the testimony, and the evidence." See attached statements from the Coastal Resources Management Council, made a part hereof as Exhibit A.

14. In accordance with the Management Practices of the Coastal Resources Management Council and G.L. § 46-23-20.4, a Subcommittee was appointed to hear the evidence produced by Plaintiff. The Subcommittee was charged with taking testimony and evidence and otherwise entertaining Plaintiff's application and with making findings of fact and a recommendation to the full council.

15. The Subcommittee conducted 23 public hearings over the course of two years; the hearings were conducted in accordance with G.L. § 42-35-1 et seq., the Administrative Procedures Act. Evidence was received through sworn testimony and exhibits, introduced in accordance with the Rhode Island Rules of Evidence.

16. On October 24, 2005 the Subcommittee convened, discussed the evidence and voted. By a 3-1 majority, the Subcommittee voted to recommend approval of Plaintiff's application with modifications.

17. The Subcommittee adopted findings of fact and recommendations for consideration by the full Coastal Resources Management Council, in accordance with G.L. 46-23-20.5.

18. On February 28, 2006 the Coastal Resources Management Council convened to take up Plaintiff's application.

19. Before that meeting, the Defendant, Donald L. Carcieri, in his capacity as Governor of the State of Rhode Island, met with Michael Tikoian, Chairman of Coastal Resources Management Council on at least one occasion.

20. The Defendant, Donald L. Carcieri and Michael Tikoian agreed to work together to defeat Plaintiff's application, in violation of Plaintiff's right to due process.

21. The Defendant, Kenneth K. McKay IV, under the direction of Defendant, Donald L. Carcieri, by and through John Does 1 through 5 and otherwise, contacted members of the Coastal Resources Management Council, over which he had appointing authority and improperly influenced the members of the Coastal Resources Management Council and convinced certain members to vote against Plaintiff's application.

22. Before the meeting of the Coastal Resources Management Council to vote on Plaintiff's application, Defendant, Kenneth K. McKay IV, in his capacity as Chief of Staff to the Governor, spoke with Michael Tikoian, Chairman of Coastal Resources Management Council on at least one occasion and engaged in more that one conversation with Michael Tikoian in order to work together to defeat Plaintiff's application.

23. The Defendant, Kenneth K. McKay IV, has directly and indirectly contacted members of the Coastal Resources Management Council and has attempted to improperly influence their vote and with the specific intent to defeat Plaintiff's application, in violation of Plaintiff's constitutionally protected rights.

24. The Defendant, Kenneth K. McKay IV, has solicited and conspired with others to act on his behalf and on behalf of the Governor to contact members of the Coastal Resources Management Council to improperly influence their vote with the specific intent to defeat Plaintiff's application.

25. Among the members of the Coastal Resources Management Council that the Defendants contacted was Michael Sullivan, Director of the Department of Environmental Management, a state employee who was appointed to that position by the Governor and who serves at his pleasure.

26. On February 28, 2006, the Coastal Resources Management Council took up Plaintiff's application for a marina expansion. All motions to grant the application garnered 5 votes in favor of the recommendation and 5 votes opposed.

27. Because the vote of the Coastal Resources Management Council was evenly divided, Plaintiff's application has not been granted by the full council.

28. As a direct and proximate result of the Defendants' and each of their wrongful interference in a quasi-judicial proceeding and improper influence of the members of the Coastal Resources Management Council, all motions to grant Plaintiff's application were tied at 5 to 5.

29. The conduct of the Defendants, individually and jointly and severally, violated Plaintiff's rights to due process and equal protection of the law.

30. The conduct of the Defendants, individually and jointly and severally is not protected conduct.

## COUNT I

## Declaratory and Injunctive Relief

1. The Plaintiff, CHAMPLIN'S REALTY ASSOCIATES realleges and reincorporates the allegations set forth in the preceding paragraphs.

2. The jurisdiction of the Superior Court is invoked pursuant to G.L. § 9-30-1 *et. seq*, the Uniform Declaratory Judgments Act.

3. The conduct of the Defendants, Donald L. Carcieri and Kenneth K. McKay IV is not protected by the constitution or laws of this state or the constitution or laws of the United States.

4. The conduct of the Defendants, Donald L. Carcieri and Kenneth K. McKay IV, in contacting members of a quasi judicial board and discussing their vote and influencing their vote in order to defeat Plaintiff's application for a marina expansion was in violation of Plaintiff's right to due process and equal protection of the laws.

5. The conduct of the Defendants, Donald L. Carcieri, Kenneth K. McKay IV and John Does 1 through 5 deprived Plaintiff of a constitutionally protected property interest and the right to have his application decided by a panel of Coastal Resources Management Council members who were not improperly influenced and inappropriately contacted by defendants in order to convince them to vote against the application.

6. After the Subcommittee voted to recommend approval of the application with modifications and adopted findings of fact and recommendations, plaintiff acquired a constitutionally protected property interest and a right to have its petition determined by a quasi judicial body free from the undue influence of defendants.

**WHEREFORE**, Plaintiff seeks a declaration that the conduct of the Defendants is not protected conduct and was in violation of Plaintiff's rights under the constitution and laws of this state and the constitution and laws of the United States. The Plaintiff also seeks an ORDER permanently restraining and enjoining the Defendants from further interference with the proceeding before the Coastal Resources Management Council or any other proceeding in any forum.

## COUNT II

## Violation of 42 U.S.C. § 1983

1. The Plaintiff, CHAMPLIN'S REALTY ASSOCIATES realleges and reincorporates the allegations set forth in the preceding paragraphs.

2. The jurisdiction of the Superior Court is invoked pursuant to title 42 of the United States Code, section 1983.

3. The conduct of the Defendants, Donald L. Carcieri, Kenneth K. McKay IV while acting under color of law, in intentionally interfering with Plaintiff's constitutionally protected property interests was in violation of 42 U.S.C. § 1983.

4. The conduct of the Defendants, Donald L. Carcieri, Kenneth K. McKay IV while acting under color of law and John Does 1 through 5 acting as agents of Defendants Donald L. Carcieri ad Kenneth K. McKay IV, was intentional and designed to injure the Plaintiff and deprive Plaintiff of rights secured by the Constitution of the United States.

5. The Defendants, Donald L. Carcieri, Kenneth K. McKay IV and John Does 1 through 5 while acting under color of state law intentionally and maliciously interfered with Plaintiff's constitutionally protected rights to due process and equal protection of the laws in violation of 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiff seeks a judgment against Defendants, jointly and severally for violations of his constitutional rights while acting under color of state law; compensatory damages; attorney's fees and costs. The Plaintiff also seeks an

ORDER permanently restraining and enjoining the Defendants from further interference with this proceeding and any other proceeding in any forum.

## COUNT III

## Malicious Interference with Prospective Business Expectations

1. The Plaintiff, CHAMPLIN'S REALTY ASSOCIATES realleges and reincorporates the allegations set forth in the preceding paragraphs.

2. After 23 evidentiary hearings before a quasi-judicial board of state government, and incurring great expense in pursuing its application in accordance with the procedures set forth by the Coastal Resources Management Council, Plaintiff received a favorable recommendation from a duly constituted Subcommittee.

3. Upon receiving a favorable recommendation from the Subcommittee, Plaintiff has a reasonable expectancy that the full Coastal Resources Management Council would consider his application unaffected by the improper influence of the Defendants who worked to defeat his expectancy.

4. The Defendants had actual knowledge of the expectancy of the Plaintiff.

5. The Defendants individually and jointly and severally in confederation with Michael I. Tikoian, wrongfully and intentionally interfered with Plaintiff's legitimate business expectance and denied Plaintiff its right to a favorable result, unaffected by the undue influence of these Defendants.

6. As a result of the tortuous conduct of the Defendants, the Plaintiff sustained damage to its property.

7. The Defendants, in concert with Michael I. Tikoian, acted deliberately with the intent to interfere with the prospective business advantage of the Plaintiff.

8. The conduct of the Defendants, Donald L. Carcieri, Kenneth K. McKay IV and John Does 1 through 5 constitutes malicious interference with Plaintiff's business expectations.

**WHEREFORE**, Plaintiff seeks compensatory damages, attorneys' fees, plus interest and costs.

CHAMPLIN'S REALTY ASSOCIATES
By its Attorney,

Robert D. Goldberg #1733
GOLDBERG LAW OFFICES
226 Cottage Street, PO Box 557
Pawtucket, RI 02862-0557
Tel: (401) 728-1510
Fax: (401) 725-3355

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY, IF APPLICABLE.**

Robert D. Goldberg #1733

DATED: March 13, 2006

EXHIBIT A

# THE HEARING PROCESS

# Common Questions and Answers

C R M C

COASTAL RESOURCES MANAGEMENT COUNCIL

**Rhode Island**
**Coastal Resources Management Council**

Oliver Stedman Government Center
4808 Tower Hill Road
Wakefield, RI 02879-1900
(401) 783-3370

**THE HEARING PROCESS**

The following information has been compiled to help explain the Coastal Resources Management Council's formal hearing process:

**WHAT IS THE COASTAL RESOURCES MANAGEMENT COUNCIL'S HEARING PROCESS?**

As an agency of the State of Rhode Island, the Coastal Resources Management Council must abide by its rules and guidelines. As such, the Council functions as a quasi-judicial body. In so doing, the Council is required to hold a public hearing for contested cases.

**WHAT IS A QUASI-JUDICIAL BODY?**

A quasi-judicial body is a state administrative agency which functions much like a court as it hears testimony, receives evidence, and makes a decision based upon the record, the testimony, and the evidence.

**WHAT DOES THIS MEAN IN THE HEARING PROCESS?**

This means that the Council acting as a quasi-judicial body must adhere to procedures in a very specific format when dealing with the public hearings and contested cases. This is why there is such an obvious formality to the hearing process.

**IS THE PUBLIC ALLOWED TO PARTICIPATE IN THE HEARING PROCESS?**

Yes. The public is given an opportunity to provide input at the appropriate time. However, the public must abide by certain structured procedures and may only address questions through the Chair.

**WHAT ARE THE TYPES OF HEARINGS?**

There are two types of public hearings. One consists of public hearings held at the semi-monthly Coastal Resources Management Council meetings which are usually held on the second and fourth Tuesdays of the month. Public hearings can also be held by a Subcommittee when legally substantive objections are received during the public comment period, the Chairman decides to appoint a Subcommittee, or when requested by four or more Council members.

**HOW DO I KNOW ABOUT THESE PUBLIC HEARINGS?**

Notices of public hearings for contested cases are published in the legal notice section of The Providence Journal. In addition, hearings are publicized through postings at Town Halls, the Council offices, and through direct mailings to interested parties who have asked to be put on the Council's list for mailings.

**HOW ARE THE PUBLIC HEARINGS CONDUCTED?**

Operating as a quasi-judicial body, the Council takes evidence, hears testimony, deliberates, and votes. During the hearing process, no questions are answered by the Council, except procedural questions. The Council acts like a panel of judges and directs the proceedings, but it does not answer general questions or respond to statements.

**CAN I BE REPRESENTED BY AN ATTORNEY?**

Applicants, as well as any other parties involved in a hearing, may represent themselves or retain an attorney.

**HOW DOES THE PROCESS START?**

For each application under consideration, the Chairman introduces the application and determines whether the applicant is in attendance and is prepared for the hearing. The Chairman will also determine if objectors are present. The applicant will then be called upon to fully present facts relevant to each case.

**ARE THERE ANY RULES AS TO PRESENTING EVIDENCE?**

Yes. The case must generally be presented following the rules of evidence as applied to civil proceedings in the Superior Court since this is a quasi-judicial hearing.

**CAN THE APPLICANT OR WITNESSES BE CROSS EXAMINED?**

Since the applicant's comments are considered official testimony, cross examination can take place by attorneys. After the applicant rests its case, other interested parties can make their presentation by statement or through an attorney. Applicant's attorneys are entitled to cross examine anyone who testifies in opposition to the application. Applicants or individuals from the general public who are not represented by an attorney are allowed to ask questions of the Chairman. If individuals from the general public are represented by counsel, their attorneys may direct cross examination.

**WHAT HAPPENS WHEN A QUESTION IS DIRECTED THROUGH THE CHAIR BY A MEMBER OF THE GENERAL PUBLIC?**

The Chairman decides what question is proper (does it generally follow the rules of evidence) and whether the witness should answer it. Repetitious, irrelevant evidence can be excluded from the hearing.

**IN WHAT FORMAT IS THE TESTIMONY GIVEN?**

Everyone who testifies in a contested case is sworn in. If an individual has religious or moral objection to being sworn in, the individual may give testimony by affirmation. Documents and testimony are officially entered in the record of Council meetings and hearings.

**HOW DOES ONE REVIEW THE TESTIMONY?**

A formal record is taken at each of the contested hearings. This means that a stenographer takes down and transcribes all that is said. The record also includes all official documents that are submitted. Before the hearing ends, all testimony will have been received, and objecting parties will have had an opportunity to state their positions.

**WHAT HAPPENS AFTER TESTIMONY IS CLOSED?**

The Council will then vote to approve or deny the application.

**WHAT HAPPENS IF AN APPLICANT MISSES THE COUNCIL MEETING?**

The applicant has three opportunities to appear before the Council for hearing before the file is cancelled.

**WHAT IF THERE IS NO SUBSTANTIVE OPPOSITION TO MY APPLICATION?**

The matter then is deemed uncontested and is assigned to the full Council for a vote. The applicant or his legal representative must be at the meeting to answer questions should the Council have any.

**IF I CANNOT ATTEND THE MEETING, MAY I HAVE SOMEONE REPRESENT ME?**

The Council's policy is to allow representation by legal counsel, applicant's engineer, or an immediate relative of the applicant. However, if an engineer is sent, the engineer may only present evidence concerning engineering matters.

**WHEN IS A SUBCOMMITTEE HEARING HELD?**

A Subcommittee Hearing is held if the Chairman or Executive Director makes a determination that there are legally substantive objections received during the public comment period which requires a separate Subcommittee meeting or when requested by four or more members of the Council.

**AFTER THE SUBCOMMITTEE HEARING, WHAT HAPPENS?**

After the Subcommittee hears all evidence and testimony, a non-binding recommendation is formulated by the Subcommittee for the Council to consider.

**WHAT HAPPENS THEN?**

The Subcommittee recommendation is then received by the full Council, and a vote is taken at a regularly scheduled semi-monthly Council meeting.

**HOW DO I KNOW WHEN THE REGULARLY SCHEDULED SEMI-MONTHLY MEETING WILL BE HELD ON MY APPLICATION?**

The applicant, abutting property owners, and interested parties receive a hearing notice which provides the scheduled date and time of the meeting. The applicant is informed that their presence is required.

**AFTER A PUBLIC HEARING IS HELD, CAN IT BE RE-OPENED?**

Once a public hearing has been held by a Subcommittee and is closed, it cannot be re-opened unless the Chairman of the Council or the Council itself orders it opened for the submission of new evidence that was not previously available to the Subcommittee.

**WHEN THE COUNCIL HEARS THE SUBCOMMITTEE RECOMMENDATION, CAN TESTIMONY BE SUBMITTED?**

The only testimony or evidence that can be submitted to the full Council after a Subcommittee hearing has been closed is new evidence not previously available when the Subcommittee met.

**WHAT HAPPENS AFTER THE FULL COUNCIL ACTS ON A CONTESTED CASE?**

In a contested case, a final written decision is rendered and mailed to all interested parties after a vote of the Council.

**WHAT IF I WANT TO REVIEW THE RECORD?**

Transcripts of testimony are available at the Council's office for examination by any party at the proceeding. Transcripts of testimony are also available from the transcript service. A copy of the CRMC transcript may be signed out with the Executive Director's approval for a period of 24 hours in for your review.

**MAY I APPEAL THE COUNCIL'S DECISION?**

An applicant or an objector is eligible to enter into the judicial review process when all administrative remedies available within the agency have been exhausted. An appeal to the Superior Court is the next step. An appeal process is available in accordance with the Administrative Procedures Act.

**HOW LONG DO I HAVE TO APPEAL?**

An applicant or objector has 30 days after the rendering of a decision to appeal to Superior Court.

********************************

We hope that the above explanations help to clarify the Administrative Hearing Process in the format that is followed to resolve contested matters before the Council. The Council will do its utmost to accommodate anyone involved in this process while following the procedures required by State Law.

If you still have questions regarding these procedures, please contact our office at (401)783-3370.

CRMC
COASTAL RESOURCES MANAGEMENT COUNCIL