**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CHAMPLIN'S REALTY ASSOCIATES | : | |
| | : | |
| V. | : | C.A. 06-135 ML |
| | : | |
| DONALD L. CARCIERI, GOVERNOR OF THE STATE OF RHODE ISLAND, KENNETH K. McKAY IV, CHIEF OF STAFF TO THE GOVERNOR OF THE STATE OF RHODE ISLAND AND JOHN DOES 1 THROUGH 5 | : | |

**MEMORANDUM IN SUPPORT OF OBJECTION OF NON-PARTIES, THE HONORABLE JOHN T. SAVOIE, FIRST WARDEN OF THE TOWN OF NEW SHOREHAM, AND NANCY O. DODGE, TOWN MANAGER OF THE TOWN OF NEW SHOREHAM, TO PLAINTIFF'S MOTION TO COMPEL AND TO HOLD THEM IN CONTEMPT and MOTION FOR PROTECTIVE ORDER TO BAR PLAINTIFF'S REQUEST FOR DISCOVERY UNDER F.R.C.P. 26(c)(1).**

Come now John T. Savoie, First Warden of the Town of New Shoreham and its highest elected official, Nancy O. Dodge, duly appointed Town Manager of the Town of New Shoreham ("Town Officials"), and move this Honorable Court to deny Plaintiff's motion to adjudge them in contempt and to compel their compliance with a subpoena to appear for a deposition and with a subpoena *duces tecum* requesting them to produce all records of any meetings and all correspondence between the Town and the Defendants, and all records of any meetings and all correspondence between the Town and Coastal Resources Management Council (CRMC) concerning Plaintiff's application.*

---

*While Plaintiff complains that it had no knowledge of the Town's objection until the day the subpoena was returnable, it has no one to blame but itself for this predicament as it scheduled the return within the time allowed for an objection.

Town Officials also move to bar Plaintiff's request for discovery under rule 26(c)(1) of the Federal Rules of Civil Procedures.

## I. Introduction

Plaintiff filed an application with CRMC seeking to expand its marina into the Great Salt Pond in Block Island. A Subcommittee was appointed by CRMC to hold hearings on the application and to present a recommendation to the full CRMC as to whether it should approve or deny the application. At the conclusion of the evidentiary hearings, the Subcommittee offered a non-binding recommendation to the full CRMC that the project be approved, with modifications. When the full CRMC convened to consider Plaintiff's application, the vote resulted in an evenly divided council. Consequently, Plaintiff's application was denied.

Plaintiff filed an appeal of CRMC's decision to the Rhode Island Superior Court pursuant to § 42-35-15 of the Administrative Procedures Act (APA). However, this appeal has not yet been decided by that Court. Rather than await the outcome of that case in determining the status of its application to CRMC, Plaintiff filed a separate complaint in Rhode Island state court, later removed to the Federal District Court, against the Governor of the State of Rhode Island, the Governor's Chief of Staff, and five John Does, alleging, among other things, that improper communication between CRMC and Defendants formed the basis for Plaintiff's adverse decision from CRMC. Hoping to substantiate these allegations, Plaintiffs served Town Officials with subpoenas to produce all records of any meetings and all correspondence between the Town and the CRMC and all records of any meetings and all correspondence between the Town and Defendants, as well as to appear at Plaintiff's Pawtucket office for depositions.

The New Shoreham Town Officials objected to Plaintiff's discovery requests, whereupon Plaintiff moved to hold them in contempt and to compel their compliance, over their objection. As the Town sees it, the sole basis Plaintiff advances for deposing its officials is because it feels like it or wants to under its view that discovery on non parties is unfettered. The Plaintiff never cites any decisional law dealing with the obvious thorny issues discussed below. Plaintiff should not be allowed to take a discovery shot at a non party with no reciprocal rights.

## II. No 42 U.S.C. § 1983 Violation

A substantive due process claim requires that plaintiff first establish a protected property interest to which the Fourteenth Amendment's due process protection applies. What qualifies as a protected property interest is a matter of state law. Mosby v. Devine, 851 A. 2d 1031 (RI 2004), Centro Medico del Turabo, Inc. v. Melecio, No. 04-1967 (1st Cir. 04/19/2005), Paul v. Davis, 424 U.S. 693 (1976). Plaintiff asserts in Count 1 of its complaint that "[a]fter the Subcommittee voted to recommend approval of the application with modifications and adopted findings of fact and recommendations, plaintiff acquired a constitutionally protected property interest." Appendix 2, p. 5. However, Plaintiff's hopeful assessment of the state of his application prior to its having been acted upon by the full CRMC is not consistent with Rhode Island law. In L.A. Ray Realty v. the Town Council of the Town of Cumberland, 698 A. 2d 202 (RI 1997), a developer's application for two sections of a subdivision was denied, and he asserted substantive and procedural due process violations, claiming a protected property interest. The Court held that the developer failed to prove a protected property interest in these two sections of the proposed subdivision because those sections were still at a preliminary stage

and "could have been denied for 'a myriad of unforeseeable reasons.'" L.A. Realty at 210, quoting the trial judge.

Similarly, at the stage of the proceedings when Plaintiff obtained Subcommittee approval for its application, this approval was not final; it was still subject to review and final approval by the full CRMC. Under CRMC regulations, R.I.G.L. § 46-23-20.4 and § 46-23-20.1(e), a Subcommittee's recommendation, consisting of proposed findings of fact and/or conclusions of law, is submitted to the council for review. "The council may, in its discretion, adopt, modify, or reject the findings of fact." § 46-23-20.4(a). Because the application at that point could still have been denied by the full CRMC "for a myriad of unforeseeable reasons," the provisional approval never conferred a protected property interest on Plaintiff, the allegation of which forms the basis of Counts I and II of Plaintiff's complaint. The Town Officials therefore respectfully request that because Plaintiff's discovery requests as to Counts I and II are irrelevant, Plaintiff's motion to compel compliance and for contempt be denied, and their motion for protective order be granted.

**III. Rule 26(b)(1)**

Rule 26(b)(1) of the Federal Rules of Civil Procedure states, in part, that material relevant to the claim or defense of either part is discoverable where "the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Conversely, material which is not reasonably calculated to lead to the discovery of admissible evidence is outside the scope of discovery. Let us take an example of an accident on a fishing boat at sea to illustrate the applicability of this rule. Suppose a piece of machinery becomes dislodged and falls on a fisherman's foot, crushing it. Plaintiff serves subpoenas on the boat owner, other deck hands, maybe the former boat owner, and the manufacturer of equipment. It is understood why these

people are subpoenaed; the allegation of negligence potentially involves the knowledge of everyone in a position to know whether the equipment was defective or was being used improperly, and whether the boat owner or former boat owner knew of such a defect. The fact of the allegation of negligence includes the assumption that one of the people subpoenaed is at fault, or is alleged to possess information regarding who might be at fault. The subpoena is relevant to the case.

Suppose the plaintiff serves a subpoena on the lady who sells clam cakes at the dock. True, she may be somehow affected by the incident, but unless there is some demonstration of a foundation for her knowledge, an allegation that she knows something specific about the equipment or the boat or the activities aboard the ship at the time of the accident, it would be outrageous to serve her with a subpoena. Where there is no allegation that she has information to offer to prove the case, her testimony is irrelevant and beyond the scope of discovery.

We have a similar situation in the instant case. Plaintiff has alleged a conspiracy between the Governor and CRMC to defeat its application. No allegation has been made that the Town Officials, non-parties to this case, are party to this alleged conspiracy, nor that the Town Officials have acted with any impropriety duplicity at all. Neither has any allegation been made that the Town Officials possess any knowledge of the alleged conspiracy. Yet the Town Officials were served with subpoenas requesting vague and vast lists of documentary evidence, as well as for their appearance at depositions, without Plaintiff having demonstrated any possible foundation for its assumption that the Town Officials possess any such evidence. Plaintiff is as entitled to depose Barry Bonds on this record as he is these Town Officials.

If this alleged conspiracy between the Governor and CRMC in fact exists, then evidence of it would be found in communications between the Governor and CRMA, not in the

documentation requested by Plaintiff, which consists of records of meetings and correspondence/communications between Town Officials and the Governor, and between Town Officials and CRMC. If one wants to know what A told B, then learning what A told C and what B told C will not produce the desired result.

The Town Officials respectfully request that Plaintiff's motion to compel compliance and for contempt be denied, as its subpoena for documents and depositions represented a request for material outside the scope of discovery, and that their motion for protective order be granted.

## III. Ripeness and Justiciability

A. Ripeness

It is well settled in Rhode Island administrative law that "[p]ursuant to the Administrative Procedures Act, judicial review is accorded any person who has exhausted all administrative remedies available to him/her within an agency and is aggrieved by a final decision in a contested case." Conklin Limestone Co. v. State Department of Environmental Management, 489 A. 2d 327, 329 (R.I. 1985). "The requirement of ripeness is based on the principle that this Court 'will not render advisory opinions or function in the abstract.'" Palazzolo v. State, 746 A. 2d 707, 713 (R.I. 2000), citing Rhode Island Ophthalmological Society v. Cannon, 317 A. 2d 124, 130-31 (R.I. 1974). The foundation of the ripeness doctrine is described by the United States Supreme Court in Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, 691 (1967); the Abbott Court explained that if courts were to decide cases that were not ripe for judicial resolution, they would tend to become entangled in "abstract disagreements" involving the policies of the agency in question.

In the instant case, upon learning of the adverse decision by CRMC in failing to grant its application, Plaintiff, properly, filed an appeal to the Rhode Island Superior Court pursuant to the APA to seek judicial review of its application. However, prior to the enunciation of a decision by that Court, Plaintiff filed the instant case, seeking injunctive relief and alleging constitutional violations and tortious behavior on the part of Defendants and CRMC. It is not at all clear, nor is any guidance offered, as to how Plaintiff purports to possess knowledge of the Superior Court's decision, in advance of its formal, published decision, and thus of the final disposition of Plaintiff's application with CRMC. Having thus filed the present case preemptive to a Superior Court decision which would provide a basis for a final decision on Plaintiff's application with CRMC, Plaintiff has failed to exhaust its administrative remedies within the CRMC, rendering the instant request for judicial adjudication premature, and unripe for judicial review.

B. Justiciability

Related to the doctrine of ripeness is the doctrine of justiciability, or political question, in which a federal court declines to rule where the Constitution has committed decision-making of an issue to another branch of government. The standard was laid out by the U.S. Supreme Court in Baker v. Carr, 369 U.S. 186, 217 (1962): the most fundamental form of a political question is the "textually demonstrable constitutional commitment of the issue to a coordinate political department." In Rhode Island, the trajectory of an application to the CRMC and through the courts is quite clearly described in the APA. Only following a final agency decision may an applicant take its case to the Rhode Island Superior Court. (§ 42-35-15.) If the application receives a further adverse ruling by that Court, then the applicant may appeal to the Rhode Island Supreme Court. (§ 42-35-16). If the applicant wishes further to pursue its appeal, the U.S.

Supreme Court may hear an appeal of a ruling from the highest state court where the issue is a constitutional one. So although the federal judiciary might conceivably, theoretically, one day become involved in this case by way of an appeal to the U.S. Supreme Court, the involvement of a federal district court is nowhere within the scheme of judicial review for state administrative activity. We can therefore consider this case to involve a "textually demonstrable constitutional commitment of the issue to a coordinate political department," which renders it a political question, and therefore non-justiciable before this Court.

Because Plaintiff's case is non-justiciable and not yet ripe for judicial review, any subpoenas of witnesses forming the basis of discovery for this case must be barred. Without a legitimate case serving as a foundation for its discovery requests, Plaintiff's request for documents and deposition testimony become an abuse of the discovery process and amount to harassment of the New Shoreham Town Officials. The Honorable John T. Savoie, New Shoreham First Warden, and Nancy O. Dodge, New Shoreham Town Manager, therefore respectfully request that Plaintiff's motion to hold them in contempt and to compel compliance with the subpoena be denied, and that Plaintiff's requests for discovery be barred by protective order.

## IV. Legislative Immunity

The United States Supreme Court described the rationale of legislative immunity, born of the Speech or Debate Clause of the Constitution, as twofold. First, "it insures that legislators are free to represent the interests of their constituents without fear that they will be later called to task in the courts for that representation." Powell v. McCormack, 395 U.S. 486, 503 (1969). Second, it insures that "legislators are not distracted from or hindered in the performance of their legislative tasks by being called into court to defend their actions." Powell v. McCormack at

505. As noted by the Rhode Island Supreme Court in Maynard v. Beck, 741 A. 2d 866 (R.I. 1999), the U.S. Supreme Court went further, in Bogan v. Scott-Harris, 523 U.S. 44 (1998) to hold specifically that municipal legislators are entitled to absolute legislative immunity. Under the doctrine of legislative immunity, legislators enjoy protection from judicial scrutiny for those activities undertaken in the discharge of the duties of their office. What exactly constitutes "legislative acts" will be the determinative issue in resolving whether or not immunity is invoked to protect the public official in question.

A recent case decided by the U.S. District Court for the District of Rhode Island, indeed this very Magistrate Judge, devoted addressed itself to an analysis of the applicability of legislative immunity to the moderator of the annual Anthony Fire Department meeting in Coventry. In Carlow v. Mruk, 425 F. Supp. 2d 225 (2006), plaintiffs were denied the opportunity to speak at the meeting because they were non-residents, and they were also prohibited from videotaping the meeting, and one plaintiff was removed from the meeting for unruly behavior. Plaintiffs filed a §1983 action, and defendant-moderator asserted legislative immunity for his legislative acts undertaken at the meeting. Noting that the doctrine of legislative immunity focuses on acts instead of actors, the court differentiated legislative acts, which are protected, from administrative or executive acts, which are not protected, utilizing a two-part analysis involving separating the general (legislative) from the specific (administrative).

However, the instant case does not involve a standard legislative immunity determination, since the Town Officials are not defendants and have not been accused of any wrongful act for which they require immunity, as is normally the case where legislative immunity is invoked. Unsurprisingly, the Town Officials have not yet encountered an analogue to their anomalous position in recent decisional law. To utilize the Carlow analysis for

determining whether an act is legislative, one must first identify the act or acts in question. In this case, the act or acts in question belongs not to the Town Officials, but to the defendants. Yet it is self-evident that the Town Officials also deserve immunity from facing "the other burdens of litigation." Carlow at 240, citing Saucier v. Katz, 533 U.S. 194 (2001) and Mitchell v. Forsyth, 472 U.S. 511 (1985), describing qualified immunity. They need the same freedom to represent their constituents and the same freedom from hindrance in the performance of their legislative tasks as would a legislator who finds himself a defendant in a similar case.

A. Hardship

This second purpose of legislative immunity, described by the Powell case as a concern that legislators not be distracted or hindered in the performance of their legislative tasks, resounds with clarity and vibrancy in the instant case. Bearing in mind that Block Island is an island in the Atlantic Ocean ten miles south of the Rhode Island mainland, merely appearing for a deposition at Plaintiff's office at the northern end of the state involves navigating U.S. territorial waters at the mercy of air or water transportation schedules. The Town Officials would need to either load their car on one of the thrice-daily ferries in order to be able to drive to Pawtucket once they reach the mainland, or to fly to the mainland, and then rent a car in order to be able to reach Pawtucket for the deposition. In either case, a great deal of time would be required, more than likely a full day or more of time that would be better spent focused on their official duties. Even if this subpoena had been served in good faith and attendant to a legitimate cause of action, compliance with the subpoena would pose a hardship. But where the request for deposition constitutes a corruption of the discovery process, the hardship to be imposed by compliance becomes unconscionable. The invocation of legislative immunity therefore becomes doubly imperative.

As to the subpoena *duces tecum*, merely reading the laundry list of documents that Plaintiff has requested requires more than a marginal expenditure of concentration and imagination. The subpoena *duces tecum*, it may be recalled, demands a vast and bottomless mountain of information:

1) Any and all records of/and concerning any and all meetings between any and all representatives of Governor Carcieri's office and any and all representatives of the Town of New Shoreham concerning the so-called Champlin's Marina expansion project.
2) Any and all correspondence and/or communications of whatsoever kind between any and all representatives and representatives of Governor Carcieri's office and any and all representatives of the Town of New Shoreham concerning the so-called Champlin's Marina expansion project.
3) Any and all records of/and concerning any and all meetings between any member or employee or representative of the Rhode Island Coastal Resources Management Council and any and all representatives of the Town of New Shoreham of/and concerning the so-called Champlin's Marina expansion project.
4) Any and all correspondence and/or communications of whatsoever kind between any member or employee or representative of the Rhode Island Coastal Resources Management Council and any and all representatives of the Town of New Shoreham of/and concerning the Champlin's Marina expansion project.

Let us imagine what compliance with this request might entail.

First, the Town Officials would need to understand and define precisely what the subpoena *duces tecum* requests. "Any and all records" suggests all paper, electronic, and telephone records, both from any land lines on which a Town representative may have spoken, and also cellular phones, including records which may have been stored in a personal digital assistant. Searching through all of these records in all paper files and on all computers involved would require the Town Officials to cease all other activities for quite a substantial period of time. The phrase "concerning any and all meetings" certainly indicates minutes from any relevant meetings. Does it also include the scheduling of these meetings? Evidence of their

location? Does this include only physical meetings, or are telephone conferences also included? Should incidental or casual meetings be included in "any and all meetings?" As to "representatives of Governor Carcieri's office," who precisely is considered a "representative?" Are all employees of the governor's office included? What about non-employees who might nonetheless be considered to represent the governor, such as Mrs. Carcieri? As for "any and all correspondence and/or communications of whatsoever kind," the possibilities here are nearly endless: correspondence and communication in this century take all variety of forms, from paper to electronic to old-school oral communications. Many of these modalities leave a documentary trail; some do not. Compliance with a request so broad is simply beyond any one human being's capability.

There is one more point to keep in mind. Plaintiff's application for its project was submitted in 2003, at least three years ago. And because the application has not yet reached final disposition, the documents requested by the subpoena are still being generated, day to day, and will continue to be produced until this application has, mercifully, come to a close. Therefore, the documents required to be produced under this subpoena, if it is indeed upheld, would comprise a massive, fuzzy, and continually-growing collection of papers whose outer boundaries may never be determined. And unlike Plaintiffs, the Town Officials are not in possession of a team of secretaries and administrative support to assist them in securing the requested documents. At minimum, the subpoena *duces tecum* is objectionable because of its gross overbreadth, an eventuality acknowledged, in dictum, by the Rhode Island Supreme Court in Boucher v. Butera, 798 A. 2d 340 (R.I. 2002). But in any case, the subpoena should be barred by the Town Officials' legislative immunity.

If the Town Officials' requested compliance with these subpoenas does not pose a distraction from or a hindrance to the performance of their legislative tasks, which is the formula identified in Powell v. McCormack, then that phrase is without meaning. To require them to comply with Plaintiff's over-broad and onerous subpoena is an affront to the offices of First Warden and Town Manager of the Town of New Shoreham, and indeed, to representative government.

The Town Officials should be barred by legislative immunity from having to comply with Plaintiff's exercise in discovery as fishing expedition. Plaintiff's motion to compel and for contempt should be denied, and the Town Officials' motion for protective order should be granted.

## V. Abuse of Process

Can Plaintiff truly be ignorant of the concepts of legislative immunity, of the exhaustion of administrative remedies, of ripeness and justiciability, and of the impropriety of overbroad subpoenas *duces tecum?* To suppose so is to strain the Town Officials' belief. The Town Officials can only theorize, therefore, that the basis for Plaintiff's request is to be found not in any serious or forthright pursuit of the claims asserted in the instant cause of action, but instead in an attempt at discovery which is prohibited by the APA. "The abuse of process is concerned with the improper use of criminal or civil process in a manner not contemplated by law, that is, a perversion of it, after it has been issued." Manufacturers Supply Co. v. Parker, 238 A. 2d 616.,617 (R.I. 1968). Although the subpoena in this case was executed lawfully, the breadth of its requests and its utter disregard for the plain legal principles militating against its success lead inexorably to the conclusion that it was issued for purposes unrelated to the substance of the

complaint , its purposes a perversion. The subpoena should therefore be dismissed by protective order, and Plaintiff's motion to hold the Town Officials in contempt and to compel them to comply with it should be denied.

## V. Conclusion

The facts of this case have been set forth in the Introduction, *supra*. The facts in plain English can be shortened considerably, as follows: Plaintiff submitted an application to CRMC for a marina expansion, which application generated a great deal of negative interest in the Town of New Shoreham. Hearings were held over the course of two years, during which all interested parties are presumed to have talked about the application and discussed the project's merits and disadvantages and potential impacts, as happens (and should happen) with effective and responsive government. The application was denied. Plaintiff, disappointed and frustrated after more than three years' fruitless expenditure of time and money, and impatient with the administrative appeal process, lashed out at several of the interested parties, accusing the Governor and the CRMC of conspiracy. Plaintiff's First Amended Complaint, attached as Appendix 2. Plaintiff then subpoenaed the Town Officials, in the hope of finding evidence to substantiate its conspiracy theory.

Plaintiff has never accused the Town Officials of any improper behavior, indeed, of any behavior at all. Yet, as non-parties, the Town Officials have been burdened with responding to Plaintiff's hastily thrown together, unsubstantiated, and impossibly vague requests and motions, necessitating a memorandum addressing issues of constitutional law, public officials' immunity from the judicial process, abuse of discovery rules, and the like, all within a very short deadline.

For the foregoing reasons, non-parties John T. Savoie, First Warden of the Town of New Shoreham, and Nancy O. Dodge, Town Manager of the Town of New Shoreham, respectfully request that the Court deny Plaintiff's Motion for Contempt and to Compel Compliance, and grant the Motion for Protective Order against the deposition and the subpoena, and if declining the Town's request that the Court restrict the relevancy scope, limit the Plaintiff to it, and order the deposition be convened on Block Island at a particular time when the Court is available by phone to assure the scope it sets is not exceeded.

Respectfully submitted,
Honorable John T. Savoie, First Warden
Nancy O. Dodge, Town Manager
By their Attorneys

Donald J. Packer, Esq.
1220 Kingstown Road
Peace Dale, RI 02879-2440
(401) 789-4887 phone
(401) 782-4210 fax
Ct. Reg. #1704

Merlyn P. O'Keefe, Esq.
1220 Kingstown Road.
Peace Dale RI 02879-2440
(401) 789-4850 phone
(401) 782-4210 fax
Ct. Reg. #2439

faxed &

CERTIFICATION

I hereby certify that I mailed a true copy of the within, first class postage prepaid, on the 10th day of July 2006 to the following:

Robert D. Goldberg, Esquire
Goldberg Law Offices
P.O. Box 557
Pawtucket, RI 02882-0557.

Claire Richards, Esquire
Special Counsel
State House, Rm. 119
Providence, RI 02903

Bonnie S. Dowling