UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHAMPLIN'S REALTY ASSOCIATES | : | |
| | : | |
| v. | : | C.A. No. 06-135 ML |
| | : | |
| DONALD L. CARCIERI, Governor of the State of Rhode Island, KENNETH K. MCKAY, IV, Chief of Staff to the Governor of the State of Rhode Island and John Does 1 through 5 | : | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Donald L. Carcieri and Kenneth K. McKay, IV, hereby move for summary judgment with respect to all counts of the above-captioned complaint. In support of their motion, the Governor and McKay rely on the Undisputed Statement of Facts and supporting Memorandum of Law both of which have been filed contemporaneously herewith.

Respectfully submitted,

DEFENDANTS
By their Attorney,

*/s/ Claire Richards*

Claire Richards (#4057)
Special Counsel
State House, Room 119
Providence, RI 02903
(401) 222-8114
(401) 222-8091 (fax)
crichards@gov.state.ri.us

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of August, 2006, I electronically filed the within *Defendants' Motion for Summary Judgment* with the United States District Court for the District of Rhode Island via the ECF system. Additionally, a copy is sent electronically via the ECF system to Robert D. Goldberg, Esq. at rgoldberg@goldberglawoffices.com.

*/s/ Rachel Gribbin*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CHAMPLIN'S REALTY ASSOCIATES | : | |
| | : | |
| v. | : | C.A. No. 06-135 ML |
| | : | |
| DONALD L. CARCIERI, Governor of the State of Rhode Island, KENNETH K. MCKAY, IV, Chief of Staff to the Governor of the State of Rhode Island and John Does 1 through 5 | : | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This is a § 1983 action against Governor Donald L. Carcieri and his Chief of Staff, Kenneth K. McKay IV, brought by a disgruntled developer whose application to expand its marina in the environmentally-sensitive Great Salt Pond on Block Island was rejected by Rhode Island's Coastal Resources Management Council ("CRMC"). Not content with its state court appeal of the CRMC's decision, the developer now seeks to punish the Governor for his opposition to the proposed expansion and to chill such opposition in the future.

Although the allegations of wrongdoing are vague, they boil down to a complaint that the Governor and McKay lobbied individual members of the CRMC – including the Director of the Department of Environmental Management who sits on the CRMC *ex officio* – to influence their vote against the proposed marina expansion. The developer contends that such lobbying activity resulted in a 5-5

vote which nixed the proposed expansion, thus depriving it of due process and equal protection and interfering with its prospective business expectations.[1]

The First Circuit has repeatedly and consistently thrown out § 1983 actions by disappointed developers against land use planning agencies based on identical due process and equal protection claims. These decisions reject the notion that a developer has a protected property interest in the approval of a development proposal. They uniformly hold that where a state provides reasonable remedies to rectify errors made by its land use agencies, that procedural due process has been provided. They establish that the rejection of a development project does not – absent extraordinary circumstances not present here – implicate substantive due process. And, in an effort to prevent the federal courts from turning into 'zoning boards of appeals,' they severely limit the constitutional guarantee of equal protection to those claims involving 'invidious discrimination,' claims not made by the Plaintiff in this case. These decisions would cut the heart out of the Plaintiff's § 1983 claims against if they had been made against the CRMC. That they have been made against the Governor and McKay, neither of whom are members of the CRMC and neither of whom owe Champlin's any due process or equal protection obligation, completely eviscerates them.

[1] While the Governor and McKay vehemently deny the allegations set forth in the Plaintiff's complaint, for the purpose of this motion for summary judgment, they accept these allegations as true. Even assuming their truth, however, this Court should grant the Governor and McKay's motion for summary judgment because none of the allegations of the complaint set forth a claim upon which relief may be granted.

In substantially the same vein, the Plaintiff's claim of interference with its "prospective business expectations" fails to state a claim upon which relief can be granted. Rhode Island does not appear to recognize such a cause of action. Nor does the Complaint set forth even the basic requisites of similar causes of action like intentional interference with prospective contractual relations.

Even if the allegations set forth in the Complaint could, somehow, establish a cognizable claim for relief, both Rhode Island and federal law grant the Governor and McKay immunity from the claims made by the Plaintiff in this case. The Governor's public opposition to the marina expansion, his often-voiced concerns for the protection of the State's coastal resources, his dissemination of these views to the public, including members of the CRMC, and even the direct and indirect lobbying activity alleged by the Plaintiff are all protected by the immunity conferred by Rhode Island's anti-SLAPP statute as well as by federal common law.

Accordingly, this Court should grant the Governor and McKay's motion for summary judgment as to all counts and award them attorney's fees and costs under Rhode Island's anti-SLAPP statute and/or 42 U.S.C.§ 1988.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the pertinent evidence is such that a rational fact finder could render a

verdict in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995) (citation omitted).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. *Id*. Once the movant has made the requisite showing, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

## III. ARGUMENT

### A. Plaintiff's Complaint Fails to State a Claim

In its Amended Complaint, the Plaintiff asserts that the Governor and McKay have both directly and indirectly contacted members of the CRMC in an effort to defeat the Plaintiff's application for a marina expansion. Boiled down to its essence, the Plaintiff contends that the Governor and McKay's alleged lobbying efforts violated Champlin's right to due process and equal protection of the laws. Complaint at Count I ¶ 4; Count II ¶ 5. Champlin's also asserts that this activity deprived it of a "constitutionally protected property interest," particularly in light of the positive recommendation it garnered from the CRMC subcommittee. Complaint at Count I, ¶¶ 5, 6. Finally, Champlin's asserts that the Governor and

McKay's lobbying activities have maliciously interfered with its "prospective business expectations." None of these allegations rise to the level of a claim upon which relief can be granted. This Court should, accordingly grant the Governor and McKay's motion for summary judgment.

*1) The Plaintiff Has no Property Interest in a CRMC Permit*

To establish a due process claim, either substantive or procedural, the plaintiff must first establish a property interest. *Macone v. Town of Wakefield,* 277 F.3d 1, 9 (1st Cir. 2002). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 569-70 (1972).

The First Circuit has consistently held that an applicant has no property interest in having its development project approved by a state or local administrative agency. *See, e.g., Macone,* 277 F.3d at 9 (rejecting the notion that a developer has a cognizable property interest in approvals from a local land planning authority). Even where a local administrative agency has preliminarily approved the developer's application, the First Circuit has declined to find a protected property interest. *Id.* (rejecting the developer's argument that three preliminary indications of support for developer's affordable housing project gave rise to a property interest sufficient to trigger due process rights); *see also, PFZ Properties, Inc. v. Rodriguez,* 928 F.2d 28, 30 (1st Cir. 1991) (expressing doubts that a developer could have a protected property interest even after having received

Planning Board approval and a resolution of support for the project from the defendant, another local land use permitting agency).

In its Amended Complaint, the Plaintiff alleges that Governor and McKay directly or indirectly contacted members of the CRMC to "discuss" and "influence" their votes in an effort to defeat the proposed marina expansion. Amended Complaint at Count I, ¶ 5. Champlin's further asserts that since the CRMC Subcommittee had already voted to recommend approval of the application, it had acquired a "constitutionally protected property interest." Amended Complaint at Count I, ¶ 6. Though unclear from the face of the Complaint, presumably the Plaintiff is asserting a property interest in obtaining an approval from the full CRMC.

As the First Circuit has recognized, there is no constitutionally-cognizable property interest in obtaining an approval from the CRMC for a development project, even where, as here, a Subcommittee of the CRMC previously voted to recommend approval of the project. The Plaintiff does not have a "legitimate claim of entitlement" to approval by the full CRMC. In its Amended Complaint, the Plaintiff establishes that its application for a marina expansion was considered in accordance with section 46-23-20.4(a) of the Rhode Island General Laws. Amended Complaint at ¶ 14. That section describes a process by which a Subcommittee of the full CRMC may hear a contested matter, consider evidence and argument and then make "proposed findings of fact and proposed conclusions of law" for submission to the full Council which "may, in its *discretion*, adopt,

modify or reject the findings of fact or conclusions of law . . . ." R.I. Gen. Laws § 46-23-20.4(a) (emphasis added).

That process is, at its heart, a discretionary one. The statute imbues the Council with great latitude in granting, denying or modifying an application before it. It never indicates that the full Council "must" approve an application after approval by a Subcommittee and does not even appear to significantly limit the Council's discretion in denying, approving or modifying such applications. By the same token, there is no other provision in the CRMC enabling legislation that secures the Plaintiff's interest in an approval or even creates any legitimate expectation of an approval. The full measure of discretion granted to the Council completely negates the Plaintiff's claim to a protected property interest. While it is unquestionably true that Champlin's desired and expected approval by the CRMC after the Subcommittee vote, Champlin's can point to no provision entitling it to such approval.[2]

Since it cannot demonstrate any protected property interest in an approval of its expansion by the CRMC, Champlin's procedural and substantive due process claims must be dismissed.

---

[2] Indeed, construing the Subcommittee vote as binding on the full Council would eviscerate section 46-23-4 which sets forth a seven member quorum requirement and specifies that the Council may act only upon "a majority vote of those present." In the instant case, the Subcommittee was composed of four members, only three of which voted to recommend approval of the application. Requiring that vote to be binding on the full Council would effectively change the statutory minimum vote necessary from four to three.

*2) Since Rhode Island Law Provides Full Judicial Review of CRMC's Decision, Champlin's Procedural Due Process Claim is Without Merit*

Even if Champlin's could demonstrate some property interest in CRMC's approval of its expansion, its due process claims still fail. The Complaint does not specify whether the alleged due process violation is a substantive or procedural one. Regardless, the Plaintiff has not stated either a procedural or substantive due process claim upon which relief can be granted.

To establish a procedural due process claim under §1983, a plaintiff "must allege first that it has a property interest as defined by state law and, second, that the *defendants*, acting under color of state law, deprived it of that property interest without constitutionally adequate process." *SFW Arecibo, Ltd. v. Rodriguez,* 415 F.3d 135, 139 (1st Cir. 2005) (emphasis added). If a post-deprivation process is available to a disappointed developer, then courts will hold that a developer has been afforded constitutionally adequate protection and will deny its procedural due process claim. *SFW Arecibo,* 415 F.3d at 140 (adequate post-deprivation process available where developer had right to and did appeal planning board decision to the Puerto Rico Court of Appeals); *Nestor Colon Medina & Sucesores, Inc. v. Custodio,* 964 F.2d 32, 40 (1st Cir. 1992) (disappointed developer had no procedural due process claim where it had the right to, and did, seek judicial review of the denial of certain land use permits); *PFZ Properties, Inc. v. Rodriguez,* 928 F.2d 28, 31 (1st Cir. 1991) (right of the developer to petition the administrative agency for reconsideration and to seek judicial review in the courts of Puerto Rico was sufficient to avoid any federal procedural due process claim); *Creative*

*Environment, Inc. v. Estabrook,* 680 F.2d 822, 833 (1st Cir. 1982) ("Thus, where, as here, the state has erected a complex statutory scheme and provided for avenues of appeal to the state courts, property is not denied without due process simply because a local planning board rejects a proposed development for erroneous reasons or makes demands which arguably exceed its authority under the relevant state statutes.").

Section 42-35-15 of the Rhode Island Administrative Procedures Act ("APA") authorizes judicial review of the CRMC's denial of the Plaintiff's application for a marina expansion. Indeed, on March 23, 2006, Champlin's filed such an appeal and that appeal is being vigorously prosecuted before the Providence County Superior Court right now. Because the Rhode Island APA provides judicial review of CRMC's decision and because Champlin's has exercised its right to the remedies afforded by the APA, there is no question that adequate post-deprivation due process has been provided. Thus, under the heavy weight of First Circuit precedent, Champlin's cannot make out a procedural due process claim and such claims should be summarily dismissed.

*3) Plaintiff's Complaint Sets Forth No Fact Which Rises to the Level of a Violation of Substantive Due Process*

The First Circuit has also repeatedly held that the rejection of a development project and the refusal to issue related permits does not ordinarily implicate substantive due process. *PFZ Properties* 928 F.2d at 31; *Chongris v. Board of Appeals,* 811 F.2d 36, 42-42 (1st Cir. 1987). Even where state officials have allegedly violated state law or administrative procedures, such violations do not

ordinarily rise to the level of a constitutional deprivation. *Chiplin Enterprises v. City of Lebanon,* 712 F.2d 1524, 1528 (1st Cir. 1983). The doctrine of substantive due process "does not protect individuals from all [governmental] actions that infringe on liberty or injure property in violation of some law. Rather substantive due process prevents 'governmental power from being abused for purposes of oppression,' or 'abuse of government power that shocks the conscience,' or 'action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests." *Nestor Colon,* 964 F.2d at 41; *Committee of U.S. Citizens in Nicaragua v. Reagan,* 859 F.2d 929, 943 (D.C. Cir. 1988) *cited with approval by PFZ Properties*, 928 F.2d at 31-32.

Where a license or permit denial is involved, the class of cases which meets the constitutional threshold is narrowly limited. *See PFZ Properties,* 928 F.2d at 31-32. In *Nestor Colon,* the First Circuit held that the denial of a land use permit, even if arbitrary, did not constitute a substantive due process violation unless it was a "truly horrendous situation[]." 964 F.2d at 45. Similarly, the First Circuit rejected a plaintiff's substantive due process claim where a regulatory board revoked his surveyor's license, allegedly due to the chairman's animus toward him, finding that the plaintiff failed to show that the treatment was "shocking or violative of universal standards of decency." *Amsden v. Moran,* 904 F.2d 748, 757 (1st Cir. 1990). This unforgiving standard guards against "insinuating the oversight and discretion of federal judges into areas traditionally reserved for state and local tribunals." *Nestor Colon,* 964 F.2d at 45.

The allegations made by Champlin's in this case bear a striking similarity to the allegations made by a disgruntled developer in *Nestor Colon*. In *Nestor Colon,* the Puerto Rico Planning Board ("PRPB") denied a developer's request for permits to construct waste disposal facilities. The developer requested reconsideration of the denials and while its request was pending, Puerto Rico's Governor publicly announced his opposition to the projects and privately indicated that he was going to exercise an "executive veto" over the project. The developer appealed to the courts of Puerto Rico and lost. Having been unsuccessful before the Puerto Rico courts, the developer filed a § 1983 action in Federal Court against members of the PRPB alleging discrimination based on political affiliation, deprivation of procedural and substantive due process as well as equal protection. The developer claimed, *inter alia*, that the PRPB officials denied the permits "acting under the malign influence of the governor and other politicians" and that members of the PRPB improperly considered *ex parte* evidence in connection with the rejection of the developer's permits. *Id.* at 40. The Court assumed for summary judgment purposes that discovery would have borne these allegations out. Nevertheless, it granted the defendants' motion for summary judgment because even assuming the allegations of the complaint to be true, they did not rise to the level of a constitutional violation of due process or equal protection.

Precisely the same facts are pled in the case at bar. Here, Champlin's asserts that the Governor and McKay improperly influenced members of the CRMC, including Michael Sullivan, the DEM Director and an *ex officio* member of the Council to reject its application for a marina expansion. Complaint at ¶¶ 20-25.

Under *Nestor Colon* and other First Circuit precedent, such allegations, even if true, simply do not rise to the level of a constitutional violation. Even where a planning board member acts "under the malign influence of the Governor" and improperly considers *ex parte* evidence in connection with a permitting proceeding, such action simply does not "shock the conscience" or violate "universal standards of decency" as required by the First Circuit.[3]

Moreover, unlike *Nestor Colon*, where the defendants were the individual PRPB officials who actually presided over the rejection of the plaintiff's application for permits, the Governor and McKay are a step away. Neither sits on CRMC and neither owes Champlin's any due process or equal protection safeguards. Those obligations are the CRMC's, not the Governor's. Thus, this Court should grant summary judgment in favor of the Governor and McKay with respect to the Plaintiff's due process claims.

*4) The Complaint Does not Set Forth Any Allegation Which Would Support an Equal Protection Claim*

An equal protection claim is found only upon a showing of a "gross abuse of power, invidious discrimination, or fundamentally unfair procedures" or some sort of unjustified disparate treatment with respect to similarly situated applicants. *Creative Environments,* 680 F.2d at 839 n. 9; *see also Torromeo v. Town of Fremont,* 438 F.3d 113, 118 (1st Cir 2006) ("only in 'extreme circumstances' will a

[3] This is particularly true with respect to allegations that the Governor improperly contacted Director Sullivan for the purpose of influencing his vote. That claim suffers from an additional impediment. As an *ex officio* member of the CRMC, Director Sullivan actually exercises the Governor's vote.

land-use dispute give rise to an equal protection claim"). Indeed, the First Circuit has warned that "if disgruntled permit applicants could create constitutional claims merely by alleging that they were treated differently from a similarly situated applicant, the correctness of virtually any state permit denial would become subject to litigation in federal court." *Nestor Colon,* 964 F.2d at 44-45. Specifically, the First Circuit looks for two elements in determining an equal protection claim: 1) whether the party was treated differently than other similarly situated, and 2) whether such a difference was based on an impermissible consideration such as race. *Macone,* 277 F.3d at 10.

The Plaintiff's Complaint is completely devoid of any allegations that it was treated differently than any other applicant before the CRMC. Also absent from its Complaint is any contention that any such difference was on account of invidious discrimination. Accordingly, this Court should grant the Governor and McKay's motion for summary judgment as to the Plaintiff's equal protection claims.

5) *The Defendants did not Deprive Champlin's of any Right*

Like all of the disgruntled developers in the cases cited above, Champlin's real beef is with the land use planning agency itself (here CRMC). In all of the cases discussed above, developers made their claims against the permitting agencies themselves[4] and not, as alleged here, against people on the sidelines lobbying the agency to go one way or another. Simply put, neither the Governor, nor McKay (nor any of the other interest groups or interested persons that have weighed in on

---

[4] Indeed, Champlin's has also filed just such a suit against the CRMC in state court.

the Champlin's matter) owe any due process or equal protection obligations to Champlin's. Neither the Governor nor McKay deprived the Plaintiff of any constitutional right by opposing, lobbying or speaking out against the proposed marina expansion. Neither the Governor nor McKay are proper parties to a suit claiming such a deprivation because the alleged deprivation (if Champlin's could meet the formidable burdens for making out such constitutional violations) comes from the CRMC and not from either of the Defendants.

*6) Malicious Interference with Prospective Business Expectations*

In Count III of its Complaint, Plaintiff alleges that the Governor and McKay maliciously interfered with its "prospective business expectations." Counsel was not able to find such a tort recognized under Rhode Island law. Rhode Island does recognize the tort of "intentional interference with prospective contractual relations" and the First Circuit, based on Massachusetts law, has evaluated a claim of "intentional interference with an advantageous relationship." Even with respect to these business interference torts, however, the Plaintiff has failed to plead the necessary predicates – the existence of a prospective or existing contractual relationship and the Defendants' knowledge of that relationship. *See, e.g., American Private Line Servs., Inc. v. Eastern Microwave, Inc.*, 980 F.3d 33, 36 (1st Cir. 1992); citing *United Truck Leasing Corp. v. Geltman*, 24 Mass. App. Ct. 553, 511 N.E.2d 20 (Mass. 1990) (setting forth the required elements of an intentional interference with an advantageous business relationship claim); *New England Multi-Unit Housing Laundry Assoc.*, 893 F. Supp. 1180, 1193 (D.R.I. 1995) citing

*Mesolella v. City of Providence,* 508 A.2d 661, 669 (R.I. 1986) (setting forth the required elements of an intentional interference with prospective contractual relations claim).

Since the Complaint does not state a cognizable cause of action under Rhode Island law and does not even meet the threshold elements of other contractually-based business interference torts, this Court should grant the Defendants' motion for summary judgment as to Count III of the Plaintiff's Complaint.

**B. Rhode Island's Anti-SLAPP Statute Bars the Plaintiff's Complaint**

Rhode Island law affords broad protection to persons who exercise their right of free speech in connection with issues under consideration by the State's legislative, executive or judicial bodies. It also provides protection to free speech made in connection with any issue of public concern, regardless of whether the matter is pending before a an agency. These protections are in place to promote and protect robust discussion on issues of public concern. R.I. Gen. Laws § 9-33-1, *et seq*. (the anti-SLAPP statute).

This lawsuit is nothing more than an attempt by Champlin's to punish the Governor for his outspoken criticism of the proposed marina expansion and to prevent him from engaging in such criticism in the future. Under Rhode Island's anti-SLAPP statute, the Governor and McKay's alleged conduct is immune from the claims raised in the Plaintiff's Amended Complaint.

*1) The Anti-SLAPP Statute Confers Immunity from Suit on Speech About Matters of Public Concern*

Section 9-33-2 of the Rhode Island General Laws establishes immunity from suit in relevant part as follows:

> A party's exercise if his or her right of . . . free speech under the United States or Rhode Island constitutions in connection with a matter of public concern shall be conditionally immune from civil claims, counter-claims or cross-claims. Such immunity will apply as a bar to any civil claim, counterclaim, or cross-claim directed at . . . free speech as defined in subsection (e) of this section, except if the . . . free speech constitutes a sham.

Subsection (e) of 9-33-2 defines "a party's exercise of its right of . . . free speech" as including:

> . . . any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; or any written or oral statement made in connection with an issue of public concern.

Thus, under Rhode Island's anti-SLAPP statute, a defendant enjoys immunity from suit for statements made in connection with an issue under consideration by any governmental body or in connection with any matter of "public concern."

This immunity not only protects statements made before legislative, judicial or administrative bodies but those made to the press and the public. *Global Waste Recycling, Inc. v. Mallette,* 762 A.2d 1208, 1212-13 (R.I. 2000). Such immunity extends to lobbying elected or appointed public officials concerning matters pending before them. *See, e.g., Pound Hill Corp. v. Perl,* 668 A.2d 1260, 1264 n. 1 (R.I. 1996) ("An example of actions by the defendants that might merit the

protection of the *Noerr-Pennington*[5] doctrine would be their successful lobbying of the mayor of Cumberland to veto the ordinance and their successful lobbying of the new council to declare the prior zone change invalid."); *see also Friends of Rockland Shelter Animals, Inc. v. Mullen,* 313 F. Supp.2d 339, 344 (S.D.N.Y. 2004) ("even lobbying activities that are unethical or result in deception are not actionable under the *Noerr-Pennington* doctrine.").

Matters pending before the State's administrative agencies – particularly those involving the potential pollution of the State's natural resources – have been specifically identified by Rhode Island's Supreme Court as matters of "public concern." *See, e.g., Global Waste Recycling,* 762 A.2d at 1211(pollution and contamination from operation of recycling plant "unquestionably" a matter of public concern); *Hometown Properties v. Fleming,* 680 A.2d 56, 64 (R.I. 1996) ("potential environmental contamination" determined to be a matter of public concern).

*2) The Conduct Alleged in the Complaint Falls Squarely within the Immunity Afforded by the Anti-SLAPP Statute*

The conduct about which the Plaintiff complains[6] – that the Governor and his Chief of Staff lobbied members of the CRMC in an effort to influence their

[5] Rhode Island's anti-SLAPP statute is the state-law codification of the federal *Noerr-Pennington* doctrine. *Hometown Properties v. Fleming*, 680 A.2d 56, 61 (R.I. 1996) (". . . the provisions of [Rhode Island's anti-SLAPP statute] are nearly identical to the Supreme Court's articulation of the constitutionally derived conditional immunity afforded to nonsham petitioning activity under *Noerr-Pennington.*").

[6] The Governor and McKay vigorously deny the allegations that they colluded with members of the CRMC to defeat Champlin's application for a marina expansion or that they pressured members of the CRMC to vote one way or another on the application. It is

votes on Plaintiff's marina expansion – is afforded immunity by Rhode Island's anti-SLAPP statute. Accordingly, this Court should dismiss the Plaintiff's claims against the Governor and his Chief of Staff.

In its Complaint, the Plaintiff makes the following specific allegations:

> 1) That the Governor and McKay directly and indirectly contacted members of the CRMC "and improperly influenced the members of the CRMC and convinced certain members to vote against Plaintiff's application." Amended Complaint at ¶¶ 21, 23.
>
> 2) That McKay spoke with the Chairman of the CRMC "in order to work together to defeat Plaintiff's application." Amended Complaint at ¶ 22.
>
> 3) That McKay "solicited and conspired with others to act on his behalf and on behalf of the Governor to contact members of the CRMC to improperly influence their vote with the specific intent to defeat Plaintiff's application. Complaint at ¶ 24.
>
> 4) That among the members of the CRMC that the Governor and McKay contacted for the purpose of influencing his vote was Michael Sullivan, the Director of the Department of Environmental Management and an *ex officio* member of the CRMC. Amended Complaint at ¶ 25.

Distilled to its essence, the Plaintiff's complaint is that the Governor opposed the proposed marina expansion and contacted (either directly or indirectly) members of the CRMC to try and get them vote his way. In other words, the Plaintiff claims that the Governor was lobbying members of the CRMC to vote against the expansion and Plaintiff objects to that alleged lobbying activity.

---

a matter of public record that the Governor opposed the proposed expansion and that he and McKay communicated that opposition as widely as possible. For the purpose of this motion for summary judgment, however, the Governor and McKay assume, as they must, the truth of the allegations made by the Plaintiff in its Complaint. Even assuming these allegations as true, Rhode Island's anti-SLAPP statute confers upon the Governor and McKay immunity from the Plaintiff's claims.

The Governor's alleged lobbying activities fall squarely within the immunity afforded by Rhode Island's anti-SLAPP statute. The proposed expansion of Champlin's Marina in the Great Salt Pond was the subject of 23 CRMC hearings, and was extensively covered by the Providence Journal as well as the Block Island Times. Public officials from the Governor and the Lieutenant Governor to Senator Chafee issued press releases voicing their opinions on the proposal. *See Exhibits B, C and D.* The CRMC's denial of the application is the subject of a heated appeal in the Superior Court which is regularly covered in the local papers. In short, the proposed expansion of the Champlin's marina is unquestionably a matter of "public concern."

The conduct of which the Plaintiff complains – that the Governor and McKay contacted members of the CRMC for the purpose of influencing their votes on the proposed explanation – is precisely the sort of conduct that is protected by the anti-SLAPP statute. The Complaint is aimed at the Governor and McKay's speech which was "made in connection with an issue under consideration or review by a legislative, executive or judicial body." It was also speech "made in connection with an issue of public concern." As such, the alleged conduct has been singled out by Rhode Island law for protection from civil claims like those set forth in the Amended Complaint.[7] Moreover, the application of the anti-SLAPP statute makes sense in this case. Public officials, like any other citizens, must not be dissuaded

---

[7] Nor does the Plaintiff assert that the Governor's speech was a sham in that it was not "genuinely aimed at procuring favorable government action, result, or outcome." On the contrary, the Complaint specifically alleges that the Governor and McKay exercised their speech in order to influence members of the CRMC to deny vote against the proposed expansion. As such, their alleged exercise of speech was not a sham.

from entering the fray in matters of public concern. If public officials were subject to lawsuits when they exercised their right (indeed, their obligation) of speech, including their lobbying activities in areas of public concern, few would run for office and even fewer would serve on the staff of such office holders.

### C. The Governor and McKay are Entitled to Qualified Immunity

Regardless of whether the Plaintiff has stated any sort of constitutional claim and regardless of the application of Rhode Island's anti-SLAPP statute, this Court should grant summary judgment in favor of the Governor and McKay because, as high ranking public officials performing discretionary functions, they are generally shielded from liability from claims like the ones set forth in the Amended Complaint. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) ("Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); *Guzman-Rivera v. Rivera-Cruz,* 98 F.3d 664, 666 (1st Cir. 1996) ("the qualified immunity defense exists not only to shield officials from liability for damages, but also to protect them from the general costs of subjecting officials to the risks of trial. . ."). "In deference to the sensitive discretionary judgments that government official are obliged to make, qualified immunity safeguards even unconstitutional conduct if a reasonable officer at the time and under the circumstances surrounding the action

could have viewed it as lawful." *Jordan v. Carter,* 428 F.3d 67, 71 (1st Cir. 2005).[8] Thus, the ultimate question before this Court is not whether the Governor or McKay committed an unconstitutional act, as the Plaintiff alleges, but whether they are entitled to immunity even if they violated the Plaintiff's due process and equal protection rights.

To answer the immunity question, the First Circuit employs a three-part test that examines both state of the relevant law and the nature of the alleged conduct. First, the Court considers whether the Plaintiff's allegations, if true, establish a constitutional violation. Second, the Court looks to see whether the right alleged was clearly established at the time of the challenged conduct. Finally, if the two prior questions are answered affirmatively, the Court determines "whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." *Jordan,* 428 F.3d at 72. As argued above, even if the Plaintiff's allegations were true, they do not rise to the level of a constitutional violation. Thus, the first two prongs of the immunity question are answered in the negative, and the Court need go no further.

Even if the first two prongs were answered in the affirmative, however, the facts alleged here fail to meet the third prong of the test: namely, whether the Governor and McKay would have understood that their conduct violated the Plaintiff's rights. The answer to this third and final prong is no. Speaking out –

[8] Qualified immunity is also recognized under Rhode Island law. *Ensey v. Culhane,* 727 A.2d 687, 690-91 (R.I. 1999) (recognizing the doctrine of qualified immunity under Rhode Island law); *see also, Pontbriand v. Sundlun,* 699 A.2d 856, 867 (R.I. 1997) (a member of the executive branch "may be entitled to some form . . . of qualified immunity for . . . acts performed in good faith.").

including lobbying members of the CRMC – about issues of public concern is within the scope of the Governor's authority. While it is true that the CRMC itself owes certain due process guarantees to persons appearing before it, these due process guarantees do not bind others – like the Governor and McKay – who are not part of the administrative process. No reasonable elected official would think themselves bound by the due process and equal protection requirements that apply to an administrative agency like CRMC.

Nor would the Governor and McKay's actions, if true, constitute an illegal *ex parte* communication. While the APA also contains a prohibition against *ex parte* communications, that prohibition applies only to members and employees of the agency, not to interested parties like the Governor and McKay. R.I. Gen. Laws § 42-35-13; *Narragansett Electric Co., v. Burke,* 404 A.2d 821 (R.I. 1979) ("although there has been an *ex parte* communication in violation of § 42-35-13, this section applies only to members and employees of the particular agency, not to interested parties such as Narragansett."). Thus, no reasonable public official would have concluded that the alleged direct and indirect communications by the Governor, McKay on the issue of the proposed marina expansion would have run afoul of any of the Plaintiff's constitutionally guaranteed rights. Accordingly, qualified immunity attached to the conduct of the Governor and McKay and forms the basis for a grant of summary judgment in favor of both.

D. **<u>Neither Defendant, Acting in his Official Capacity is Subject to a Suit for Damages under § 1983</u>**

Finally, it is well-settled that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action." *Rafferty v. Cranston Pub. School Committee,* 315 F.3d 21, 28 (1st Cir. 2002); *Wang v. New Hampshire Bd. of Reg. in Medicine,* 55 F.3d 698, 700-01 (1st Cir. 1995); *Tang v. Rhode Island Dep't of Elderly Affairs,* 904 F. Supp. 55, 59-60 (D.R.I. 1995) ("neither a state nor its officials acting in their official capacities are 'persons' amenable to suit for monetary damages under § 1983."). Since Count II of the Complaint seeks compensatory damages, attorney's fees and costs from the Defendants in their official capacities, it must be dismissed.

**IV. CONCLUSION**

For the foregoing reasons, the Defendants, Donald L. Carcieri and Kenneth K. McKay, respectfully request that this Court grant their motion for summary judgment with respect to all counts of the Plaintiff's First Amended Complaint and award them fees and costs under R.I. Gen. Laws §9-33-2 and/or 42 U.S.C. § 1988.

Respectfully submitted,

DEFENDANTS
By their Attorney,

*<u>/s/ Claire Richards</u>*
Claire Richards (#4057)
Special Counsel
State House, Room 119
Providence, RI 02903
(401) 222-8114
(401) 222-8091 (fax)
crichards@gov.state.ri.us

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of August, 2006, I electronically filed the within *Defendants' Memorandum in Support of Their Motion for Summary Judgment* with the United States District Court for the District of Rhode Island via the ECF system. Additionally, a copy is sent electronically via the ECF system to Robert D. Goldberg, Esq. at rgoldberg@goldberglawoffices.com.

*/s/ Rachel Gribbin*