**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**Champlin's Realty Associates** **C.A. NO: 06-135 ML**

**vs.**

**Donald L. Carcieri, et al**

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA AND ISSUANCE OF A PROTECTIVE ORDER**

## I. INTRODUCTION

This matter is before the Court on the complaint of Plaintiff, Champlin's Realty Associates, ("Plaintiff") alleging that the Governor of Rhode Island, Donald L. Carcieri, and members of his staff have violated certain rights of Plaintiff regarding an application for a marina expansion on Block Island, Rhode Island filed by Plaintiff with the State of Rhode Island Coastal Resources Management Council ("CRMC" or "the Council").

The CRMC is an agency created by R.I.G.L. § 46-23-1 et seq. and inter alia has been delegated state authority to issue, modify, or deny applications for activities taking place within and adjacent to the State's tidal waters. The CRMC's jurisdiction is undisputed.

The CRMC is comprised of sixteen (16) volunteer public members who serve without compensation and when acting on an application such as Plaintiff's, sit in a quasi-judicial capacity. Further, the Council is authorized by statute to employ a full-time staff as well as an Executive Director to aid the CRMC members in their deliberations. Danni Goulet is a full-time staff member employed by the CRMC. Michael Tikoian ("Tikoian") is the Chairman of the CRMC, Paul Lemont ("Lemont") is the Vice Chairman of CRMC, and David Abedon is a CRMC member. Chairman Tikoian, Vice Chairman Lemont and member Abedon have participated in a quasi-judicial capacity in reviewing the Champlin's application.

It is uncontroverted that Champlin's application is a contested case pursuant to Rhode Island's Administrative Procedures Act ("APA"), R.I.G.L. § 42-35-1 et seq.

The CRMC proceedings have concluded and Champlin's application for a four (4) acre marina expansion was not approved by the CRMC.

Plaintiff issued a Subpoena Duces Tecum, as well as a Notice of Deposition, to the CRMC by and though staff member, Danni Goulet, seeking documents and conversations between CRMC staff members and CRMC member(s) Tikoian, Lemont and Abedon which reflect advisory opinions, recommendations and deliberations comprising part of the process

whereby CRMC members formulated their decisions and policies relating to Champlin's application before the CRMC. (Attached as Exhibit A) Further, during the course of Danni Goulet's deposition, Plaintiff's counsel continually sought to inquire into communications between staff member Goulet and CRMC members that related to the decision making process of whether the CRMC should approve, modify, or deny Plaintiff's application before CRMC. Specifically, Plaintiff sought to inquire *inter alia* into, or seek documents relating to, whether CRMC members asked Goulet to prepare a modification to Champlin's proposal (Exhibit B, Depo. Transcript p.31, line 21-23), the substance of any conversations Goulet may have had with CRMC members regarding an alternative or modification to Champlin's application, (Id, p.73, line 10-12) and the substance of any communication Goulet may have had with any CRMC member regarding their thought process, deliberations, and any advice regarding modifications they may have sought from Goulet. (Id, p.55, line 2-5) [1]

As set forth below, the information and documents sought by Plaintiff are protected from discovery by the common law deliberative process privilege. Therefore, CRMC seeks an Order quashing the subpoena and prohibiting Plaintiff from recommencing the deposition of Daniel Goulet [2] to the extent it will inquire into those privileged areas.

## ARGUMENT

### I. THE DOCUMENTS AND TESTIMONY PLAINTIFF SEEKS FROM CRMC INVADES THE DELIBERATIVE PROCESS PRIVELEGE

Courts have long recognized a policy against exploring into the mental processes of governmental decision-makers. N.O. v. Callahan, 110 F.R.D. 637, 642 (D. Mass. 1986); Gomez v. City of Nashua New Hampshire, 126 F.R.D. 432 (D.N.H. 1989). This privilege is known as the "deliberative process" privilege. Rodgers v. Hyatt, 91 F.R.D. 399, 404 (D. Colo. 1980); Kinoy v. Mitchell, 67 F.R.D. 1, 10-11 (S.D.N.Y. 1975). The purpose of this long-standing privilege is to prevent injury to the quality of governmental decisions. The United States Supreme Court has described the scope and rationale of the privilege as follows:

> [T]he cases uniformly rest the privilege on the policy of protecting the 'decision making process of government agencies and focus on

[1] These citations are illustrative of the questions posed, and are by no means an exhaustive inventory of questions asked and objected to as privileged during the course of the Goulet deposition.
[2] In its subpoena, Plaintiff also sought documents relating to any conversation Danni Goulet had with non-CRMC members regarding the Champlin's application. CRMC has no objection to that request.

> documents' reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decision and policies are formulated.

N.L.R.B. v. Sears Roebuck & Co., 421 U.S. 132, 150 (1975) (internal citations omitted). In other words, the deliberative process privilege protects communications consisting of advisory opinions, recommendations, and deliberations between governmental personnel, or between governmental personnel and outside consultants. Murphy v. Dept. of Army, 613 F.2d 1151, 1154 (D.C. Cir. 1979) (privilege protects those communications consisting of advice, recommendations, opinions, and other information transfers involved in the deliberative process of governmental agencies); *see generally* McCormick on Evidence § 108, at 266 (E. Cleary 3d ed. 1984).

The deliberative process privilege promotes candor in internal government deliberations and decisions. The purpose of the privilege is to promote the public interest by encouraging a free flow of communication within the government regarding the formulation of policy. The privilege "encourages frank discussion of ideas and policies, thereby ensuring the quality of governmental decision making." Mobil Oil Corp. v. Department of Energy, 102 F.R.D. 1, 5 (N.D.N.Y. 1983) (citing NLRB. v. Sears, Roebuck & Co., *supra*).

For further example, in United States v. American Tel. & Tel. Co., 524 F.Supp. 1381, 1389 (D.D.C. 1981), the court held that United States Justice Department attorneys could not be interrogated as to why they changed their position in a lawsuit. Another leading case is Carl Zeiss Shiftung v. V.E.B. Carl Zeiss, Jenna, 40 F.R.D. 318 (D.D.C. 1966), aff'd sub nom. V.E.B. Carl Zeiss, Jenna v. Clark, 384 F.2d 979 (D.C. Cir. 1967), cert. denied, 389 U.S. 952 (1967), where the court noted: "the privilege sub-serves a preponderating policy of frank expression and discussion among those whom rests the responsibility of making the determinations that enable government to operate . . ." Id. at 324. The court went on to note that, in order for the department to function adequately, it "must depend heavily upon candid exchange of ideas, not only among its own staff but also, particularly because of the institutional nature of its decisions, with other agencies whose interests are involved." Id. at 324-25. As stated by the lower court:

> Frank expression and discussion among those upon whom rests the responsibility for making the determinations that enable government to operate, and thus achieves an objective akin to those attained by other privileges more ancient and commonplace in character.

Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 324 (D.D.C. 1966).

While most of the case law on the deliberative process privilege comes from the federal sphere, the privilege has also been recognized with respect to state agencies. In Moorhead v. Lane, 125 F.R.D. 680 (C.D. Ill. 1989), for example, the court described at length the procedure it must follow in order to determine whether a state correctional facility was entitled to deliberative process privilege from discovery in federal courts. Ultimately, it decided that "it is proper to recognize a executive pre-decisional deliberative process privilege for state agencies." *Id.* at 686. Likewise, in N.O. v. Callahan, 110 F.R.D. 637 (D. Mass. 1986), the court noted that although the Massachusetts legislature had not expressly created a governmental privilege, its statutory exclusion of certain internal communications from the definition of "public records," together with case law supporting the concept of nondisclosure of mental processes of agency decision-makers, indicates legislative and judicial acceptance of the theory behind the privilege. [3] Consequently, the court recognized the state mental health facility's claim of privilege as applied to inter-agency memoranda. *Id.* at 642-43.

Turning to the matter at bar, under the deliberative process privilege, the opinions, recommendations, and evaluations that may or may not have been made by the Coastal Council, or any member of the Coastal Council with its staff, cannot be the subject of inquiry. The Plaintiff should be precluded from delving into decisions or evaluations made during the deliberations upon the application or the reasoning as to ultimate votes. Such disclosure would improperly divulge mental process protected by the privilege.

To restate, in the instant matter, the material sought is either an external communication confirmable though others or an internal communication (or thought process) protected by the deliberative process privilege. Either way, the Plaintiff fails. The depositions must not go forward and the subpoena should be quashed to the extent it inquires into intra-agency matters.

## CONCLUSION

For the foregoing reasons, the CRMC respectfully requests that the subpoena and Notice of Deposition be quashed to the extent it delves into communications and thought processes between CRMC staff and CRMC members.

Coastal Resources Management Council,
By its Attorney,

[3] Rhode Island's Access to Public Records Act, R.I.G.L. 38-2-2(E) and (K) contains a similar exception.

*/s/ Brian A. Goldman, Esq.*
Brian A. Goldman, Esq./#3940
Goldman Law Offices
681 Smith Street, Providence, RI 02908
Tel: (401) 521-4100
Fax: (401) 274-5433
Goldlaw@cox.net

CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of August 2006, I electronically filed the within *Motion for a Protective Order* with the United States District Court for the District of Rhode Island via the ECF system. Additionally, a copy is sent electronically, via the ECF system to Robert D. Goldberg, Esq. at rgoldberg@goldberglawoffices.com and Claire Richards, Esq. at crichards@gov.state.ri.us.

*/s/ Brian A. Goldman, Esq.*