**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF RHODE ISLAND**

CHAMPLIN'S REALTY ASSOCIATES :

v. : C.A. NO: 06-135 ML

DONALD L. CARCIERI, GOVERNOR :
OF THE STATE OF RHODE ISLAND, :
KENNETH K. McKAY IV, CHIEF OF STAFF :
TO THE GOVERNOR OF THE STATE OF :
RHODE ISLAND and JOHN DOES, 1 through 5 :

## OBJECTION

Now comes the Plaintiff, CHAMPLIN'S REALTY ASSOCIATES, in the above-entitled matter and hereby objects to Defendants' motion for summary judgment. Attached hereto is Plaintiff's memorandum in opposition to Defendants' motion for summary judgment.

Champlin's Realty Associates
By its Attorney,

*/s/ Robert D. Goldberg*

Robert D. Goldberg (RI Bar #1733)
GOLDBERG LAW OFFICES
226 Cottage Street
Pawtucket, RI 02860
Tel: (401) 728-1510
Fax: (401) 725-3355
rgoldberg@goldberglawoffices.com

## CERTIFICATION

I hereby certify that on September 6, 2006 I electronically filed the within *Objection* with the Clerk of the U.S. District Court for the District of Rhode Island using the CM/EFC System. The following participants have received notice electronically:
Claire Richards, Esq. at crichards@gov.state.ri.us

*/s/ Robert D. Goldberg*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CHAMPLIN'S REALTY ASSOCIATES | : | |
| v. | : | C.A. NO: 06-135 ML |
| DONALD L. CARCIERI, GOVERNOR<br>OF THE STATE OF RHODE ISLAND,<br>KENNETH K. McKAY IV, CHIEF OF STAFF<br>TO THE GOVERNOR OF THE STATE OF<br>RHODE ISLAND and JOHN DOES, 1 through 5 | :<br>:<br>:<br>:<br>: | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Facts and Travel**

The defendants have submitted a memorandum in support of their motion for summary judgment that is factually and legally incorrect. Champlin's is not a disgruntled developer who is not content with its administrative appeal to the Rhode Island Superior Court. Rather, Champlin's contends that it was the victim of a concerted effort by the defendants and others to improperly influence and direct the outcome of a quasi-judicial proceeding.

In this case, Champlin's alleges that defendants directly contacted members of the Coastal Resources Management Council ("CRMC") in order to get them to vote against Champlin's application and also contacted other intermediaries with the same objective. The members of CRMC are appointed and reappointed by the Governor and the Governor has hiring and firing authority with respect to CRMC member Sullivan. Champlin's alleges that

this conduct resulted in a denial of its right to due process and is seeking injunctive relief against any further efforts to influence the result in this case.

This suit is not about any lobbying or public statements made by the Governor or his staff. Champlin's simply contends that it was denied a fair procedure because of the efforts of these defendants to reach quasi-judicial officers, over whom one has appointment power and tell them how to vote.[1]

The discovery also establishes that members of the subcommittee were approached by Tikoian or CRMC staff (presumably at his direction) and urged to vote in favor of the so-called 100-foot plan. This plan was not in evidence and had never been disclosed to plaintiff, yet, three days after the subcommittee vote, Tikoian and CRMC staff members presented a power point demonstration of this plan to the defendants in the Governor’s office. The purpose of this meeting is awaiting a resolution of a motion to compel.

Additionally, Tikoian, who was not a member of the subcommittee and had no role at this stage of the quasi-judicial proceeding, saw to it that defendant Carcieri was briefed about the Champlin's application by Paul Lemont, the subcommittee chairman, while the evidentiary hearings were on-going—the details of this “briefing” have not yet been uncovered.

Furthermore, Champlin's has not turned this court into a zoning board of appeal; nor is it seeking review of the agency decision that is pending in the Superior Court. Champlin's contends that after it received a favorable recommendation of the subcommittee, these defendants met with members of the CRMC staff and its chairman, agreed on a different (and

---

[1] Because defendants have assumed as true the factual allegations in plaintiff’s complaint, Champlin's will not append extensive exhibits to its memorandum that support its claims. However, it should be noted that discovery obtained thus far reveals significant interaction between CRMC Chairman Michael Tikoian with defendants and discussions by vice chairman Paul Lemont with defendant Carcieri during the course of the evidentiary hearings. The content of these discussions may lead to an amended complaint. See also attached hereto and made a part hereof “Plaintiff’s Evidence of Irregularities Before The Coastal Resources Management Council” which was filed in Plaintiff’s administrative appeal.

secret plan) and that the defendant's reached out to the sitting members of CRMC or their acquaintances, in an effort to influence the vote and that as a result, Champlin's was denied a fair hearing. This is a harm that is cognizable under the Fifth and Fourteenth Amendments to the Constitution and Article 1, Section 2 of the Constitution of Rhode Island.

**The Plaintiff has raised a Cognizable Civil Rights Violation**

The defendant's assert that plaintiff has no constitutionally protected property interest in the recommendation of the subcommittee. Champlin's denies this contention and submits that it certainly had a right to a fair proceeding in which the governor of the state did not contact the judicial officers in order to convince them to vote his way. Champlin's contends that it was deprived of its right to a fair hearing as a direct result of the conduct of these defendants—that these defendants and others engaged in meetings and ex parte discussions and agreed to a course of conduct aimed at defeating Champlin's application.

It cannot be disputed that plaintiff was entitled to a fair hearing and did not get one. This is the essence of the claim in this case—not that it was denied a CRMC assent, but that the hearing itself was corrupted by the collusive conduct of these defendants and certain members of CRMC, including its chairman. This conduct is a violation of Champlin's right to substantive due process.

A litigant's substantive due process guarantee "functions to protect individuals from particularly offensive actions on the part of government officials, even when the government employs facially neutral procedures in carrying out those actions. Pagan v. Calderon, 448 F.3d 16 (1st Cir.2006). Substantive due process rights do not "serve as a means of constitutionalizing tort law so as 'to impos[e] liability whenever someone cloaked with state authority causes

harm.'" Id. (quoting County of Sacramento v. Lewis, 523 U.S. 833, 848, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). However where, as here, a plaintiff can show that the acts "were so egregious as to shock the conscience ***and*** that they deprived him of a protected interest in life, liberty or property," Id. the claim survives a summary judgment challenge.

In this case, Champlin's applied to CRMC for a permit to expand its marina. It participated in 23 evidentiary hearings spanning over 3000 transcript pages at a cost in excess of $500,000. The CRMC subcommittee that heard the evidence voted 3-1 to recommend a modified expansion of 170 feet. Immediately after this vote, these defendants, in concert with the CRMC chairman and staff, engaged in ex parte discussions culminating in direct and indirect contact with quasi-judicial officers over whom the governor has appointment authority, to direct them to vote against this project. As a result, Champlin's contends it was denied its right to a fair hearing.

Clearly the constitution guarantees a litigant a fair hearing by a judicial officer(s) who is not improperly influenced by a high government official. Champlin's submits that the governor's effort to directly reach quasi-judicial officers in order to direct the outcome of a case shocks the conscience. Imagine how shocked and offended this Court would be if the governor (or the President) contacted the Court in order to achieve a result in a case.

**There is No Adequate Remedy for a Corrupt Hearing**

The defendants contend that the state Administrative Procedures Act, Chapter 35 of title 42 of the General Laws affords Champlin's an adequate post deprivation remedy. Although Champlin's acknowledges that there is a post-deprivation appeal process available that plaintiff is prosecuting in accordance with G.L. §42-35-15, this remedy is not adequate for this injury. First, these defendants are not and cannot become named parties to that proceeding. Second, if that

proceeding results in a remand to the CRMC, without the injunctive relief this case seeks, plaintiff may again face the same egregious conduct. The Governor of the state contacted quasi judicial officers, directly or indirectly through others in order to deny Champlin's its right to a fair hearing and to effectuate a denial of its application. At a minimum, plaintiff is entitled to a judicial determination that this conduct violated its due process guarantee and should be restrained. Further, plaintiff has a right to seek reimbursement for its attorney’s fees as compensatory damages.

## **Malicious Interference with Prospective Business Expectations**

The defendants seek summary judgment on the ground that Rhode Island does not recognize the tort of malicious interference with contractual relations. It does. See L.A. Ray Realty v. Town of Cumberland, 698 A.2d 202, (R.I. 1997) (Tort of interference with prospective contractual relations are the existence of a business relationship or expectancy; knowledge by the interferor of the relationship or expectancy; an intentional act of interference that caused compensable harm). The plaintiff submits that it has adequately pleaded this count.

## **Rhode Island’s Anti-SLAPP Statute is Inapplicable to the Case at Bar**

The defendants contend that the conduct alleged in this case is constitutionally protected. They are wrong. The plaintiff has alleged that defendants directly and through others named as John Does, under color of law, contacted quasi judicial officers, over whom the Governor has appointment and (in one instance) hiring authority, in order to direct them to vote against Champlin's. This case has nothing to do with outspoken criticism of this proposed expansion. It is an unlawful attempt to influence a vote and to deprive plaintiff of its right to a fair hearing.

Champlin's has alleged and the discovery obtained thus far will show that defendants held meetings with CRMC chairman Michael Tikoian (Tikoian) and CRMC staff with the intent to defeat Champlin's application and to "unlawfully influence the members to vote against plaintiff's application."

The plaintiff has not alleged any issue involving "the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances" as described in the state's anti-SLAPP statute.[2] The conduct alleged in this case involves clandestine meetings and communications between defendants Carcieri and McKay (and John Does to be named later as discovery develops) and members of the CRMC, including its chairman, with the intent to achieve a result adverse to the interests of the plaintiff. This conduct, if proven, does not approach constitutionally protected speech.

The so-called anti-SLAPP statute, chapter 33 of title 9 of the General Laws affords protections for the exercise of free speech.

> "The anti-SLAPP statute was enacted to prevent vexatious lawsuits against citizens who exercise their First Amendment rights of free speech and legitimate petitioning by granting those activities conditional immunity from punitive civil claims." Alves v. Hometown Newspapers, Inc., 857 A.2d 743, 752 (R.I. 2004).

This enactment was not intended to protect the state or its agents from intentional violations of a citizen's constitutional rights. Additionally, because defendants have failed to comply with the procedural requirements of the statute, the anti-SLAPP defense is not available

By its terms, the anti-SLAPP statute provides for burden shifting at several critical stages. First, the statute comes into play solely when an issue of free speech or the right of petition is implicated in the civil action for which the defendant claims the protections of the statute. Only

[2] The plaintiff notes that defendants are state actors—they have no right to petition themselves for redress of grievances. As such, G.L. § 9-33-1 et seq has no applicability to the case at bar.

then does the burden shift to the plaintiff to prove "that such conduct is a sham to defeat an anti-SLAPP defense." Id. at 753. Thus, the defendant has the burden of establishing that the suit against it is the result of an exercise of his or her rights of free speech or the right of petition. These defendants have failed to do so and cannot do so.

This suit is not about the free speech rights of the governor of the state or (incredibly), his right to petition the government for redress. The claim in this case is that the Governor, by and through his agents, intentionally sought to deprive Champlin's of its right to due process by directing CRMC members, over whom he had appointment authority, and hiring authority, and directing them to vote against the project. Viewed in any light, this conduct is not protected by the constitution. Thus, notwithstanding its dubious viability in the context of a federal civil rights action, the anti-SLAPP statute has no applicability to the case at bar.

**Qualified Immunity**

The application of the qualified immunity doctrine with regard to USC §1983 and constitutional deprivation claims against state officials was considered by the First Circuit Court of Appeals in the case of Savard, et al v. State of Rhode Island, et al, 338 F.3d 23(1st Cir. 2003) (This was an appeal from an affirmance of a Decision by Judge Lisi.) Savard involved claims by Plaintiff inmates at the Adult Correctional Institution against the State of Rhode Island and a number of prison officials for damages sustained as result of alleged unconstitutional strip searches. Given the State's immunity from suit, the controversy before the trial court in Savard devolved upon the liability vel non of the individual prison officials. Those officials claimed immunity from suit on the basis of qualified immunity, a claim which was analyzed by the Court of Appeals in the following manner:

> Where as here, a party's entitlement to summary judgment hinges upon a claim of qualified immunity we must balance the need to vindicate constitutional rights against the need to insulate public officials from civil litigation that might unduly inhibit the assiduous discharge of their duties. In balancing those competing needs we employ a three part algorithm. The threshold question is whether the Plaintiffs have established a constitutional violation. The second question deals with fair warning; It asks whether the law was clearly established at the time of the constitutional violation. The final question is whether a reasonable official situated similarly to the Defendant(s) would have understood that the conduct at issue contravened the clearly established law. [citations omitted] Savard at 27

Champlins has discussed the constitutional violations earlier in this Memorandum.

The appellate court went on to note:

> The fundamental justification for the qualified immunity defense is that public officials performing discretionary functions should be free to act without fear of punitive litigation except when they fairly can anticipate that their conduct will give rise to liability for damages. That anticipation depends in large part on the extent to which legal rules are clearly established. The standard is an objective one. It follows, then, that an inquiry into the reasonableness of an officer's conduct must focus on the discernable contours of the law at the time of the alleged act or omission. [citations omitted] Savard at 28

The appellate court went on to note:

> This exploration is not limited to cases directly on point. Because "officials can still be on notice that their conduct violates established law even in novel factual circumstances," overcoming a qualified immunity defense does not require plaintiff to show that either the particular conduct complained of or some materially indistinguishable conduct has previously been held unlawful. [citations omitted] Savard supra.

The Governor of the State of Rhode Island and his staff are necessarily charged with a knowledge and understanding of the General Laws of the State of Rhode Island. R.I.G.L. §42-35-13 prohibits ex parte consultations by agency members with other persons where they are "assigned to render an order or make findings of fact and conclusions of law in a contested

case…" Governor Carcieri and Kenneth McKay, had to know in entering into ex parte consultations with CRMC Council members and employees prior to the Council hearing on February 28, 2006, that they were initiating and participating in communications with CRMC members and staff which the agency persons were statutorily forbidden to undertake.

But the issue is more elementary than this. The CRMC is a quasi-judicial agency and, with regard to Champlin's, was tasked with rendering a decision with regard to a hotly contested marina expansion application. Governor Carcieri and Kenneth McKay had absolutely no role to play - - discretionary or otherwise - - in the carrying out of this function. That the Governor interjected himself into a quasi-judicial process whereby rulings were to be made by Council members who owed their position on the CRMC to his pleasure, renders his behavior particularly egregious. Put most simply, Governor Carcieri and Kenneth McKay had to know that interjecting themselves at the time that they did and attempting thereby to influence the ultimate Council vote was wholly improper behavior for the highest officials in the executive branch of Rhode Island state government. In so doing, they denied Chanplin's its constitutional right to a fair hearing on the merits.

Incredibly, the Defendants' summary judgment memorandum appears to include within the scope of the Governor's authority "lobbying members of the CRMC - - about issues of public concern…" (Defendants' Summary Judgment Memorandum p. 24) Nothing could be farther from the truth. Had the Governor or any member of his staff attempted to influence a member of the Rhode Island judiciary concerning a particular case before him or her for decision, the impropriety of such behavior would be clear. It is however equally improper for him or for members of his staff to engage in such behavior with members of a quasi-judicial agency such as the CRMC. Governor Carcieri is not an ex officio member of the CRMC. He was not performing

a discretionary function and he and Kenneth McKay had to know that their interference in the CRMC's determinations in the Champlin's application contravened clearly established law.

## Conclusion

Based on the foregoing, Plaintiff respectfully requests that Defendants' motion for summary judgment must be denied.

The nature of the proof in this case is such that much of the Plaintiff's evidence will be from adverse or hostile witnesses. In the event that this Court deems affidavits necessary to defeat this motion for summary judgment, Plaintiff respectfully requests that discovery be allowed to continue. At present, Plaintiff has filed a request for production of documents, a request for admissions, and either completed or begun three (3) depositions and has filed two motions to compel. It is anticipated that at least four (4) more depositions will be necessary, including members of the CRMC and the Governor's staff.

Champlin's Realty Associates
By its Attorney,

*/s/ Robert D. Goldberg*

Robert D. Goldberg (RI Bar #1733)
GOLDBERG LAW OFFICES
226 Cottage Street
Pawtucket, RI 02860
Tel: (401) 728-1510
Fax: (401) 725-3355
rgoldberg@goldberglawoffices.com

**CERTIFICATION**

I hereby certify that on September 6, 2006 I electronically filed the within *Plaintiff's Memorandum in Opposition to Defendants' motion for summary judgment* with the Clerk of the U.S. District Court for the District of Rhode Island using the CM/EFC System. The following participants have received notice electronically:Claire Richards, Esq. at crichards@gov.state.ri.us

*/s/ Robert D. Goldberg*