**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CHAMPLIN'S REALTY ASSOCIATES | : | |
| VS. | : | C.A. 06-135 ML |
| DONALD L. CARCIERI, GOVERNOR OF THE STATE OF RHODE ISLAND, KENNETH K. MCKAY IV, CHIEF OF STAFF TO THE GOVERNOR OF THE STATE OF RHODE ISLAND AND JOHN DOES 1 THROUGH 5 | : | |

**PLAINTIFF'S MOTION TO ADJUDGE THE COASTAL RESOURCES MANAGEMENT COUNCIL, BY AND THROUGH DANNI GOULET, IN CONTEMPT AND TO COMPEL ANSWERS TO QUESTIONS AT HIS DEPOSITION**

Now comes Plaintiff Champlin's Realty Associates and moves that non-party deponent Danni Goulet be held in contempt pursuant to the provisions of F.R.C.P. 45(e) for his failure to answer certain questions at the taking of his deposition on or about July 12, 2006, and to comply fully with ***a subpoena duces tecum***, a copy of which is attached hereto and made a part hereof. Further Plaintiff moves that said deponent be compelled to provide responsive answers to all questions put to him at said deposition, which he was instructed not to answer, and to produce all documents set forth in Exhibit A of the attached subpoena.

Plaintiff represents that its counsel communicated with deponent's counsel and was unable to resolve these issues without court intervention.

**WHEREFORE**, Plaintiff prays that this Honorable Court adjudge Danni Goulet in contempt and order him to appear to provide more responsive answers at his continued

deposition and to produce all of those documents fully responsive to the attached subpoena. Plaintiff Champlin's Realty Associates, Inc. further moves this Honorable Court for costs and attorneys fees associated with this Motion.

Champlin's Realty Associates
By its Attorney,

*/s/ Robert D. Goldberg*

Robert D. Goldberg (RI Bar #1733)
GOLDBERG LAW OFFICES
226 Cottage Street
Pawtucket, RI 02860
Tel: (401) 728-1510
Fax: (401) 725-3355
rgoldberg@goldberglawoffices.com

**PLEASE TAKE NOTICE THAT THE ABOVE MOTION SHALL BE SET DOWN FOR HEARING AT SUCH TIMES AS THIS HONORABLE UNITED STATES DISTRICT COURT SHALL SEE FIT.**

*/s/ Robert D. Goldberg*

Robert D. Goldberg (RI Bar #1733)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CHAMPLIN'S REALTY ASSOCIATES | : | |
| VS. | : | C.A. 06-135 ML |
| DONALD L. CARCIERI, GOVERNOR<br>OF THE STATE OF RHODE ISLAND,<br>KENNETH K. MCKAY IV, CHIEF OF<br>STAFF TO THE GOVERNOR OF THE<br>STATE OF RHODE ISLAND AND<br>JOHN DOES 1 THROUGH 5 | :<br>:<br>:<br>:<br>:<br>: | |

**MEMORANDUM OF PLAINTIFF CHAMPLIN'S REALTY ASSOCIATES**
**IN SUPPORT OF SAID PLAINTIFF'S**
**MOTION FOR CONTEMPT AND TO COMPEL**

## TRAVEL OF CASE

Plaintiff Champlin's Realty Associates ("Champlin's) has filed a three count Complaint against Defendants. Count I is for Injunctive and Declaratory Relief, Count II sounds in Title 42 USC §1983 violations, and Count III sounds in malicious interference with prospective business expectations. The Complaint was initially filed in Rhode Island state court but was removed to the United States District Court by the Defendants pursuant to a Notice of Removal dated on or about March 23, 2006.

Counsel for all parties met with Judge Lisi and a pre-trial order and discovery schedule was entered. Pursuant thereto a deposition took place on July 12, 2006 of one Danni Goulet, a staff engineer with the Rhode Island Coastal Resources Management Council, (CRMC). Pursuant to said deposition a subpoena duces tecum was served upon Mr Goulet - - a copy of said subpoena is attached to Plaintiff's Motion.

**STATEMENT OF FACTS**

Champlin's Realty Associates currently operates a marina resort on the Great Salt Pond on Block Island in the Town of New Shoreham. In 2003 Champlin's filed an application with the CRMC to expand its marina. The CRMC designated a sub-committee of its members to hear Champlin's application and a four member sub-committee did in fact hear the Champlins' application for twenty-three public hearings over the course of two years. On October 24, 2005 the Sub-committee convened in workshop session, and by a three to one majority voted to recommend approval of Plaintiff's application with modifications. (First Amended Complaint – FAC - ¶ 16) Thereafter on February 28, 2006 the entire ten member Council took up Champlin's application. At that meeting, all motions to grant the application in modified form garnered five votes in favor and five votes opposed. (FAC ¶ 26)

Michael Tikoian as Chair of the CRMC voted against the Champlin's application. Champlin's FAC avers (¶ 19) that after the workshop and before the February 28, 2006 meeting Defendant Governor Donald Carcieri met with Michael Tikoian at least once and (FAC ¶ 20) agreed to work with Tikoian to defeat Champlin's application. Champlin's FAC further avers (¶ 21) that Defendant Kenneth K. McKay, IV, Governor Carcieri's Chief of Staff, under the Governor's direction and otherwise, contacted members of the CRMC over which the Governor had appointing authority and "improperly influenced members of the Coastal Resources Management Council and convinced certain members to vote against Champlin's application." In this action,[1] Champlin's seeks an order "permanently restraining and enjoining the Defendants from further interference in the proceedings before the Coastal Resources Management Council or any other proceeding in any form" (Count I), asserts that Defendants Carcieri and McKay

[1] Champlin's has also filed an appeal of the CRMC tie vote in Providence County Superior Court pursuant to the state Administrative Procedures Act.

"while acting under color of state law intentionally and maliciously interfered with Plaintiff's constitutionally protected rights to due process and equal protection of the laws in violation of 42 USC § 1983 (Count II - - FAC ¶ 5), and in Count III accused the Defendants of malicious interference with Champlin's perspective business expectations. In Counts II and III, Champlin's seeks compensatory damages.

Deponent Danni Goulet is a staff engineer employed by the CRMC and in fact testified before the Sub-committee (in opposition to Champlin's) as to dredging issues raised with reference to the Champlin's application. Goulet testified at his deposition (Goulet depo p 28 – attached in full) that after the Sub-committee workshop, (the evidentiary hearings had closed several months before) he was asked to and did draw up a set of proposed plans for Champlin's to be permitted to expand out approximately 100 feet from its existing piers - - the later Sub-committee recommendation was for approximately 170 feet - - Champlin's original application had been for 240 feet. Goulet further testified (Goulet depo p 29) that he took these plans to a meeting at Governor Carcieri's office attended by Tikoian, Governor Carcieri, CRMC Executive Director Grover Fugate and two staff persons from the Governor's office, Mark Adelman and Jeff Grybowski.

The meeting with the Governor took place the Friday immediately following the Sub-committee workshop, (Goulet depo p 41) and the purpose of Goulet's attendance was to "give the Governor an overview" of the Champlin's facility. (Goulet depo p 41) Goulet presented to the Governor a slide presentation that depicted the Champlin's facility as it now exists, the proposed perimeter as requested in the application, an overlay of the Sub-committee recommendation of several days before, and some alternatives, including the 100 foot plans. (Goulet depo pp 42 – 43) Goulet testified that after his presentation he and Fugate left and Tikoian stayed. (Goulet depo p 50)

Mr Goulet appeared for his deposition accompanied by attorney Brian Goldman, counsel for CRMC. At the beginning of the deposition, Mr Goldman indicated that Mr Goulet had not brought with him, and as a CRMC staff member would not produce:

1. Any other plans, maps, drawings, designs or proposals to the extent they exist which were used by the CRMC staff or the CRMC council members in aiding them in forming their opinions, recommendations or that were part of deliberations on the Champlin's application.

2. Any and all notes, memoranda, records of any and all conversations, communications, meetings or actual conversations between Mr Goulet and any CRMC members. (Goulet depo. p 11)

It was the position of counsel for the CRMC that such documents were covered by the "deliberative process privilege" as would be any communications between Mr Goulet and any CRMC members. In fact, Goulet brought nothing in response to paragraph 2 of the subpoena. In response to paragraph 1, he brought only the plans produced at the meeting with the Governor.

The deposition thereupon went forward. At various times throughout the deposition Mr Goldman either instructed Mr Goulet not to answer a question or not to produce a document, at all times relying upon the deliberative process privilege. Following is a summary ("Recitation") of the documents which Mr Goulet was instructed not to produce, (other than has already been described) and questions to which he was instructed not to respond to by Mr Goldman, always asserting the deliberative process privilege. (All page references are to the Goulet deposition.)

1. Mr Goulet was directed not to advise whether any other plans, maps, drawings, designs or proposals other than those marked as exhibits in the hearing process for Champlin's Marina were in existence. (p 14)

2. Mr Goulet was instructed not to bring any notes, memoranda, records, or any records of any conversations, or communications, if any, between Michael Tikoian and CRMC member Paul Lamont. (p 15)

3. As to certain plans ("plans") which had been prepared by Mr Goulet subsequent to the Sub-committee workshop, Mr Goulet was instructed not to respond to questions as to whether the plans were shown to any CRMC member or to any counsel on either side of the Champlin's application. (pp 30 – 31)

4. Mr Goulet was directed not to respond to the question: "Now where did you get the figure of 100 foot seaward expansion from?" (p 32)

5. Mr Goulet was instructed not to respond to questions as to why he did not consult with certain CRMC staff members in the drawing of the aforesaid plan, whether he had been told by Michael Tikoian to construct a 100 foot plan, or whether he had shown or discussed the plans with CRMC Chair and Members Tikoian, Lamont and Sahagian.

6. Goulet was instructed not to answer a question as to any discussions he may have had with Chairman Tikoian before the meeting at the Governor's office. (pp 44 – 45)

7. Mr Goulet was instructed not to respond to a question as to whether Chair Tikoian had told him to draw up plans for a lesser expansion. (p 52)

8. Mr Goulet was instructed not to respond to a question as to whether he knew about Tikoian's disappointment with the Sub-committee vote even before media coverage of the comments. (p 54)

9. Mr Goulet was instructed not to respond to a question whether he had participated in meetings prior to the Sub-committee workshop where he showed Sub-committee members copies of the plans. (p 55)

10. Mr Goulet was instructed not to respond to a question as to whether he had any further discussion of the plans with council members between the Sub-committee vote and the full Council. (p 60)

11. Mr Goulet was instructed not to answer a question as to whether at any time he had discussed Champlin's plans with Council Member Abedon. (p 68)

In each case the reason the documents were not produced, or the deponent was instructed not to answer was based upon the deliberative process privilege. The deposition was suspended to a later date.

**ARGUMENT**

The parameters of the deliberative process privilege were described by Justice Bruce Selja in the First Circuit case of Texaco Puerto Rico, Inc. et al v. Department of Consumer Affairs, et al, (1st. Cir. 1995) 60 F.3d 867, 884 as follows:

> The deliberative process privilege "shields from public disclosure confidential interagency memoranda on matters of law or policy." National Wildlife Federation v. United States Forest Service, 861 F.2d 1114, 1116 (9th Cir. 1988) The privilege rests on a policy of affording reasonable security to the decision making process within a government agency. See NLRB v. Sears Roebuck and Company, 421 U.S. 132, 150, 45 L.Ed.2d 29, 95 S.Ct. 1504 (1974)
>
> The Supreme Court has restricted the deliberative process privilege to materials which are both pre-decisional and deliberative. See EPA v. Mink, 410 U.S. 73, 88, 35 L.Ed.2nd 119, 93 S.Ct. 827 (1973) In other words to qualify for the privilege a document must be (1) pre-decisional, that is: "antecedent to the adoption of agency policy," and (2) deliberative, that is: actually "related to the process by which policies are formulated." National Wildlife 861 F.2d at 1117 (citations omitted) Because the deliberative process privilege is restricted to the intra-governmental exchange of thoughts that actively contribute to the agency's decision making process, factual statements or post-decisional documents explaining or justifying a decision already made are not shielded. See Sears Roebuck, 421 U.S. at 151 – 52, Mink, 410 U.S. at 88. See also Developments in the Law - - Privileged Communications 98 Harv.L.Rev. 1450, 1620 – 21 (1985)
>
> Even if a document satisfies the criteria for protection under the deliberative process privilege, non-disclosure is not automatic. The privilege "is a qualified one." STC v. Warner Communications, Inc., 742 F.2d 1156, 1161 (9th Cir. 1984) and "is not absolute." First Eastern Corp. v. Mainwaring, 305 U.S. App.D.C. 371, 21 F.3d 465, 468 n.5 (D.C. Cir. 1994) Thus in determining whether to honor an assertion of the privilege, a court must weigh competing interests. See Id: See also Developments supra., at 1621 (Noting that courts asked to apply the privilege must engage in "ad hoc

> balancing of the evidentiary need against the harm that may result from disclosure").
>
> At bottom then, the deliberative process privilege is "a discretionary one" In re Nat'l Bank Sec. Litig., 478 F.Supp. 577, 582 (E.D.N.Y. 1979). In deciding how to exercise its discretion an inquiring court should consider among other things, the interests of the litigants, the society's interest in the accuracy and integrity of fact finding, and the public's interest in honest effective government. See Warner Communications, 742 F.2d at 1162. Consequently "where the documents sought may shed light on alleged government malfeasance" the privilege is routinely denied. Franklin, 478 F.Supp. at 582; see also Bank of Dearborn v. Saxon, 244 F.Supp. 394, 401 – 03 (E.D. Mich. 1965) ("The real public interest under such circumstances is not the agency's interest in its administration, but the citizen's interest in due process") aff'd. 377 F.2d 496 (6th Cir. 1967)

**A. Application of the privilege should be denied absolutely.**

In the case at bar Champlin's is averring that its constitutional and civil rights to a fair hearing have been denied by collusion between Defendant Governor Carcieri and his staff, and Chair Michael Tikoian of the CRMC, to influence other members of the CRMC to vote against, or to severely modify, beyond the terms of the Sub-sommittee recommendations, Champlin's application.[2] The documents sought, most particularly the "hundred foot plan" which was never presented to the Sub-committee during the evidentiary hearings, and the inquiries of Goulet as to what he knew about communications between the Governor's Office, CRMC staff and Council members, are sought to "shed light on alleged government malfeasance."

It is important for Champlin's in particular and for the State of Rhode Island in general to know the extent to which the Champlin's application was denied by the CRMC, (albeit by a tie vote) because of extra-judicial influences beyond the CRMC. Given the CRMC's quasi-judicial

[2] In fact this kind of ex-parte communication is prohibited by Rhode Island law - - See R.I.G.L. § 42-35-13.

function, Champlin's should also be permitted to discover whether any Council members examined any plans, maps, etc. which were not presented at the Sub-committee hearings.

**B. Post decisional discovery is not privileged.**

As will be argued infra Goulet and the CRMC have not provided sufficient information concerning the documents which they claim are privileged for Champlin's or this Court to know whether they are pre-decisional or post-decisional. While it might be assumed that some of the notes, memoranda and records to be produced pursuant to paragraph 2 of Plaintiff's Subpoena would be pre-decisional, there may be discoverable documents or memoranda dated after February 28, 2006, and to the extent that such documents explain, justify or are in any way relevant to the previous decision they are not shielded under the privilege. Similarly Goulet should be compelled to respond to the inquiries described in paragraph 1 in the Recitation found in pages 4 – 5 of this Memorandum.

**C. Documents or inquiry sought to elicit facts are not privileged.**

Much of what Danni Goulet was compelled to bring to the deposition is factual in nature, particularly those documents contained in paragraph 1 of the subpoena. But there may be documents referenced in paragraph 2 of the subpoena which are factual rather than deliberative in nature. Again, as Plaintiff will argue infra an adequate description is called for from deponent and the CRMC as to any documents discoverable but withheld pursuant to paragraph 2 of the subpoena.

Review of the Recitation of objections raised (at pp 4 and 5 supra) shows that most, if not all, of the questions which Mr Goulet was instructed not to answer call for factual information. Those would include from that Recitation: Paragraphs 1, 3, 4, 5, (especially as to whether he had

been told by Tikoian to construct the 100 foot plan) 6, (such discussions could not be deliberative inasmuch as they were in anticipation of a meeting with a non-Council member) 7, 8, 9, 10 and 11. As to paragraphs 10 and 11, Goulet should at least be compelled to indicate whether such discussions did in fact transpire and provide at least the general nature of those discussions in order that it can be determined whether they were in fact pre-decisional and deliberative as opposed to factual.

**D. The CRMC has waived any right it may have to rely upon the deliberative process privilege.**

It has been noted that: “true waiver of the government privileges is accomplished in the same fashion as waiver of other privileges; i.e., by voluntary disclosure of a significant portion of the information claimed to be privileged.” 26A Wright and Graham Federal Practice and Procedure, 275. Such a waiver must be authorized by the agency and must be voluntary. Rupert v. United States, 225 FRD 154, 157 (D.Pa. 2004) “Voluntary disclosure of a significant part of the privileged communications may waive the privilege. See proposed Fed.R.Evid. 511, Peck v. United States, 514 F.Supp. 210, 212 (D.S.D.N.Y. 1981).

Deponent Danni Goulet was instructed by CRMC counsel not to respond to any questions or provide any documents related to communications within and between CRMC Council members or employees. Nevertheless it is clear from the questions to which he did respond, that much of the same information was provided to Governor Carcieri and his staff members at a meeting which took place nearly four months before the final Council meeting of February 28, 2006.

Although the Governor and his staff members are officers and employees in the Rhode Island state government, they play absolutely no role in the quasi-judicial decision-making process of the CRMC. There is no question, given the parties involved, (particularly Chairman

Tikoian) that it was a voluntary agency decision to make this information available to Governor Carcieri and his staff members, none of whom had any reason or role within the deliberative process of the CRMC to be given this information. Therefore Champlin's would further argue that the deliberative process privilege has been waived by Goulet and the CRMC.

**E. Goulet failed to comply with the provisions of F.R.C.P. 45(c)(2)(B) and F.R.C.P. 45(d)(2).**

Danni Goulet and the CRMC are not parties to this litigation. Nevertheless an individual subpoenaed pursuant to F.R.C.P. 45 to testify and to produce certain documents which he believes are privileged from production has certain procedural obligations. Pursuant to F.R.C.P. 45(c)(2)(B) Goulet, within 14 days after service of the subpoena (Goulet was served 19 days before the deposition date), must serve upon the party or attorney designated in the subpoena a written objection to production of the alleged privileged materials. Although counsel for Goulet (and the CRMC) registered objections to production of certain materials and anticipated questions at the beginning of the deposition, no written timely objection was provided before the deposition to counsel for Champlin's.[3]

Further pursuant to F.R.C.P. 45(d)(2), when information subject to a subpoena is withheld on a claim of privilege, the claim must be made expressly and supported by a description of the nature of the documents or things not produced, sufficient to enable the demanding party to contest the claim. This also was not done in this case. The parameters of the deliberative process privilege are such that if it is to be applied in this case, Champlin's needs to know, as to documents and information which is alleged to be privileged, the date that they were produced, distributed or occurred, and whether they are truly deliberative in nature as opposed to factual, and therefore not protected.

---

[3] Over a month and a half after the deposition the CRMC filed a Motion for a protective order.

**CONCLUSION**

Plaintiff Champlin's Realty Associates would argue that this Court should exercise its discretion and not allow the deliberative process privilege to be applied in this case. Champlin's Complaint clearly sounds in inappropriate governmental collusion and interference with the deliberative process of the Coastal Resources Management Council in acting upon its application for a marina expansion. The privilege, if any, was waived by the CRMC's submitssion of much of the subject materials to Governor Carcieri and his staff.

If in fact, this Court nevertheless feels that the privilege may apply as to some evidence, Plaintiff prays that as to all materials, information and conversations which are clearly factual in nature that the privilege not be held to apply, and as to the other elements of the privilege Goulet and the Coastal Resources Management Council be ordered to comply with the requirements of F.R.C.P. 45(d)(2) in order that this Plaintiff - - and ultimately this Court - - be able to make a determination as to whether the privilege applies and to what.

Champlin's Realty Associates
By its Attorney,

*/s/ Robert D. Goldberg*

Robert D. Goldberg (RI Bar #1733)
GOLDBERG LAW OFFICES
226 Cottage Street
Pawtucket, RI 02860
Tel: (401) 728-1510
Fax: (401) 725-3355
rgoldberg@goldberglawoffices.com

**CERTIFICATION**

I hereby certify that on September 7, 2006 I electronically filed the within *Plaintiff's Motion to Adjudge CRMC by and through Danni Goulet in Contempt and to Compel + Memorandum in Support of said motion* with the Clerk of the U.S. District Court for the District of Rhode Island using the CM/EFC System. The following participants have received notice electronically: Claire Richards, Esq. at crichards@gov.state.ri.us; and Brian Goldman, Esq. at Goldlaw@cox.net

*/s/ Robert D. Goldberg*