# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| Champlin's Realty Associates | : | |
| v. | : | C.A. NO: 06-135 ML |
| Donald L. Carcieri, Governor of the State of Rhode Island, Kenneth K. McKay IV, Chief of Staff to the Governor of the State of Rhode Island and John Does, 1 through 5 | : : : : | |

## NOTICE TO TAKE DEPOSITION

PLEASE TAKE NOTICE that the Plaintiff, Champlin's Realty Associates, in the above-entitled cause will take the deposition of **COASTAL RESOURCES MANAGEMENT COUNCIL ("CRMC"), by and through, DANIEL GOULET**. Said deposition will take place on **Wednesday, July 12, 2006** at **2:00 p.m.** at the **Goldberg Law Offices, 226 Cottage Street, Pawtucket, Rhode Island** for any lawful purpose of testimony before a Notary Public of the State of Rhode Island or some other duly qualified person, and thereafter from day to day as the taking of the deposition may be adjourned, at which time and place you are notified to appear and take such part in the examination as you may be advised and as shall be fit and proper.

PLAINTIFF'S EXHIBIT

Champlin's Realty Associates
By its Attorney,

Robert D. Goldberg #1733
Goldberg Law Offices
226 Cottage Street
Pawtucket, RI 02860
Tel: (401) 728-1510
Fax: (401) 725-3355

**CERTIFICATION**

I hereby certify that on the 23rd day of June 2006, I mailed by regular mail, postage prepaid, a true copy of the within *Notice of Deposition {CRMC by and though DANIEL GOULET}* to:

Allied Court Reporters
115 Phenix Avenue
Cranston, RI 02920

Claire Richards, Esquire
Special Counsel
STATE HOUSE, Room 119
Providence, RI 02903

AO88 (Rev. 1/94) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

CHAMPLIN'S REALTY ASSOCIATES

V.

DONALD L. CARCIERI et al

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 06-135 ML

TO: Coastal Resources Management Council ("CRMC"), by and through, DANIEL GOULET, 4808 Tower Hill Road, Suite 3, Wakefield, RI 02879

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Goldberg Law Offices, 226 Cottage Street, Pawtucket, RI | 7/12/06 @ 2:00 PM |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED "EXHIBIT A"

| PLACE | DATE AND TIME |
|---|---|
| Goldberg Law Offices, 226 Cottage Street, Pawtucket, RI | 7/12/06 @ 2:00 PM |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF ~~OR DEFENDANT~~) | DATE |
|---|---|
| [signature] Atty for Plaintiff | June 23, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Robert D. Goldberg RI#1733, 226 Cottage Street, Pawtucket, RI 02860 Tel: 728-1510

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

Champlin's Realty Associates :

v. : C.A. NO: 06-135 ML

Donald L. Carcieri, et al :

**To: Coastal Resources Management Council ("CRMC"), by and though, DANIEL GOULET**

**EXHIBIT A**

1) Any and all plans, maps, drawings, designs or proposals (other than those marked as Exhibits in the Hearing process) for Champlin's marina, including but not limited to any and all plans submitted to the Office of the Governor of the State of Rhode Island.

2) Any and all notes, memoranda, records of any and all conversations, communications, meetings had by Mr. Goulet with any person, firm, corporation or governmental entity concerning Champlin's marina, including but not limited to Michael Tikoian, Paul Lemont, representatives of the Town of New Shoreham or any other objectors to the Champlin's proposal and/or any member of the staff of the Office of the Governor of the State of Rhode Island and/or the Governor of the State of Rhode Island.



# Group faults coastal council chief's record

BY PETER B. LORD
JOURNAL ENVIRONMENT WRITER

PROVIDENCE — The chairman of the agency that regulates development of Rhode Island's coastline has recused himself 57 times during the last six years because of potential conflicts with applicants requesting permits, an environmental advocacy group says.

Cynthia Giles, director of the Conservation Law Foundation's Rhode Island office, called the number of recusals by Michael Tikoian, chairman of the Coastal Resources Management Council, a "disturbingly large number."

The total is nearly twice the number that were on file at the state Ethics Commission, which records recusals in which an official disqualifies himself from a case

SEE TIKOIAN, A6

# Tikoian

*Continued from Page A1*

because of a potential conflict.

In many cases, Tikoian failed to file any paperwork explaining the conflict, according to CLF.

Records of the council attribute 44 of the potential conflicts to lawyer Joseph DeAngelis, a former speaker of the Rhode Island House of Representatives, according to the CLF. Tikoian said he has no personal conflict with DeAngelis; the problem, he said, is that an associate with his accounting firm does the taxes for DeAngelis' law office.

The coastal council approved or continued all but one of the cases brought by DeAngelis, according to CLF records.

The CLF report prompted one member of the coastal council, Gerald P. Zarrella, to call for Tikoian to step down.

Zarrella and two other council members confirmed publicly last week that they were upset that Tikoian tried to persuade them to change their votes on the recent Champlin's marina case, an apparent violation of council procedures. Zarrella said he thinks it's time for Tikoian to go.

Giles sent her report to Senate leaders, believing, she said, it supports a proposal she made earlier to strip the council of powers over coastal permitting, leaving it as a policymaking group.

Lawyer Robert D. Goldberg, who represents Champlin's Marina in its highly controversial case before the coastal council, said he might file an Ethics Commission complaint over Tikoian's failure to file notices of each recusal. Also, Goldberg said he may seek to have Tikoian found in contempt in Superior Court for not responding openly about the recusals during legal proceedings last fall.

"The guy is an accountant," Goldberg exclaimed. "He should be able to count."

Tikoian serves as the unpaid chairman of the council, a state agency run by 11 political appointees who generally meet twice a month to vote on applications for permits to build everything from docks to mansions along the coast.

With a staff of just 29 employees, the council also monitors dredging projects, coastal restoration and a major new planning effort for the upper Bay coastline, in addition to reviewing hundreds of permit applications each year.

While the staff has been widely praised, this has been a controversial time for the council itself. It drew widespread complaints with its vote last spring to



and its recent move to approve, and then rescind approval for, high-density housing near a salt pond in Charlestown.

The very future of the council is in the hands of the General Assembly this year. For years, it had a 17-member board largely comprising legislators or appointees of the legislature and governor.

The separation-of-powers vote two years ago prompted the legislators to leave. Now the commission is down to 11 members. Some assumed Governor Carcieri would simply appoint replacements. But the legislature insists there should be a law prescribing appointments, and recently some legislators have been saying they believe the state Constitution requires that the coastal council remain under Assembly control.

Rep. Peter Ginaitt, chairman of the House Committee on the Environment, said legislators clearly want more oversight, but the Warwick Democrat said he doesn't know how to resolve the debate over who makes appointments.

Sen. Susan Sosnowski, D-South Kingstown, last week introduced legislation to create a permanent legislative oversight committee to review coastal council activities and to have the final say on any new rules or regulations the agency creates.

"When I see all the waterfront development coming along, it's clear the legislature needs more oversight," Sosnowski said.

She said she's heard plenty of complaints about the council's effort to pass rules allowing high-density, affordable housing in Charlestown. And she said the CLF report on Tikoian's recusals "raises questions."

"The General Assembly has to know what's going on at CRMC," Sosnowski said.

As for who will make appointments to the coastal council, Sosnowski said she has asked the leadership to request an advisory opinion from the courts as to whether the governor or the legislature should make the appointments.

"It is clear the CRMC cannot stay the way it was," Sosnowski said. "Everything evolves."

Tikoian sent a letter to Senate leaders Friday arguing that several of the cases cited by CLF were continuances, so the true number of recusals was 50 — which he said represents only 8 percent of all the votes he took.

"I hope that this small percentage does not detract from all the positive changes and votes that have been made during my time as the council chairman," Tikoian said.

During his tenure, he said the council has approved three special area management plans, a marine resources development plan and numerous regulations to "protect and replenish coastal habitat."

Paul Lemont, vice chairman of the council, chairs the meetings when Tikoian recuses himself and said no one does any special favors for DeAngelis.

"Mike should not have to resign," Lemont said. "He's a good guy who puts in a lot of his own time for this agency. If Zarrella is unhappy, he should resign."

The issue of the recusals arose last fall during the battle over Champlin's. A four-member subcommittee that held 23 hearings on the case voted 3-1 to give the marina about two-thirds of the expansion it was seeking in Block Island's Great Salt Pond.

Tikoian immediately objected, telling reporters he favored a much more limited expansion.

In a series of court hearings afterward, Goldberg tried to persuade Tikoian to recuse himself from the full council's vote.

Goldberg said he filed a Freedom of Information request on Tikoian's recusals and is still waiting for the council to respond. Meanwhile, he said, the state Ethics Commission reported the number of recusals was 27.

During the last few months, a rift has grown between Zarrella and Tikoian.

Last week Zarrella said Tikoian tried to persuade him to vote for minimal expansion of Champlin's. Two other subcommittee members, Thomas Ricci and Jerry Sahagian, said they were lobbied by Tikoian as well.

"In my opinion, he was trying to put together a consensus to give them something much less. He wanted to give them 100 feet," said Ricci.

Lemont, who favored the lesser expansion, said no one lobbied him.

Sahagian said he was upset because the 100-foot proposal never came up during two years of hearings. "I didn't have my mind made up, but up to that point most of the testimony pointed to more like 200 feet," Sahagian said.

The full council ended up voting 5-5, effectively rejecting the application. Champlin's is appealing in federal and state courts.

On March 14, Zarrella went public on another issue during a coastal council meeting.

Tikoian announced he would recuse himself that night from a vote on a permit requested by a couple for a new pier in Tiverton. Deangelis was their lawyer.

"I don't mind you recusing yourself," Zarrella interjected. "But when you do it and we vote and then you criticize us. . . . The [Bonnet Shores] vote was important to you, and you threw us under the bus," Zarrella grumbled.

(The Bonnet Shores applicant was represented by DeAngelis, so Tikoian recused himself. After it became public, he criticized his fellow council members for approving it.)

Tikoian didn't respond.

None of Zarrella's comments made it into minutes of the meeting.

Last week, Tikoian said he wouldn't respond to the accusations about the Champlin's case.

As for the Bonnet Shores vote, Tikoian said, "I had nothing to do with that case. I left the room

**k Adelman - RE: champlins**

:: Mark Adelman
Tikoian, Michael M.
: 11/9/2004 10:24 AM
ect: RE: champlins

erstand what you're saying however providing the info to the Governor so he can better understand this would not compromise :C. This is done with every department that has regulatory functions. Give me a call to discuss as we need this information.

"Michael M. Tikoian" <MikeT@pgco.com> 11/5/2004 11:25:20 AM >>>
:k:

do not have a formal paper on the town's position other then they have formally objected to project along with three other interveners(Committee for the Great Salt Pond, Block Island d Trust and Conservation Law Foundation). The case file on this is about two boxes including scripts. Obviously the Town Council promoted a writing campaign against the project. The MC offices received about 350 letters on this project both for and against. Mark, when the 'ernor went out to the dredge, I had asked my Vice Chair Paul Lemont to accompany him. .le on the dredge, Paul did update the Governor on the Champlin's application.

do not have a detail list of the groups for and against the project other then the one objector n) and three interveners. I assume the Marine Trade organization is for the project, but have formally testified yet. The applicant has not completed their presentation to the subcommittee is time (but are about to finish). Thereon the objector and interveners will get an opportunity 'esent their position.

.ld you like our staff to copy the file for you? Mark, we cannot have staff people render their ions or best representation of the position of individuals or organizations on this case as it impair the independence of the agency. We can provide you with the files that are very minous..

:, as the CRMC is quasi judicial, the agency must be cognizant of the legal ramifications of al.

: this is a highly contested case, I am just being cautious.

Mark Adelman [mailto:madelman@gov.state.ri.us]
Friday, November 05, 2004 11:00 AM
chael M. Tikoian
ct: champlins

**Mark Adelman - RE: champlins**

---

**From:** Mark Adelman
**To:** Tikoian, Michael M.
**Date:** 11/9/2004 10:24 AM
**Subject:** RE: champlins

---

Mike,
I understand what you're saying however providing the info to the Governor so he can better understand this would not compromise CRMC. This is done with every department that has regulatory functions. Give me a call to discuss as we need this information.
Mark

>>> "Michael M. Tikoian" <MikeT@pgco.com> 11/5/2004 11:25:20 AM >>>
Mark:

We do not have a formal paper on the town's position other then they have formally objected to the project along with three other interveners(Committee for the Great Salt Pond, Block Island Land Trust and Conservation Law Foundation). The case file on this is about two boxes including transcripts. Obviously the Town Council promoted a writing campaign against the project. The CRMC offices received about 350 letters on this project both for and against. Mark, when the Governor went out to the dredge, I had asked my Vice Chair Paul Lemont to accompany him. While on the dredge, Paul did update the Governor on the Champlin's application.

We do not have a detail list of the groups for and against the project other then the one objector (town) and three interveners. I assume the Marine Trade organization is for the project, but have not formally testified yet. The applicant has not completed their presentation to the subcommittee at this time (but are about to finish). Thereon the objector and interveners will get an opportunity to present their position.

Would you like our staff to copy the file for you? Mark, we cannot have staff people render their opinions or best representation of the position of individuals or organizations on this case as it may impair the independence of the agency. We can provide you with the files that are very voluminous..

Mark, as the CRMC is quasi judicial, the agency must be cognizant of the legal ramifications of appeal.

Since this is a highly contested case, I am just being cautious.

[redacted]

Mike

---

**From:** Mark Adelman [mailto:madelman@gov.state.ri.us]
**Sent:** Friday, November 05, 2004 11:00 AM
**To:** Michael M. Tikoian
**Subject:** champlins

PLAINTIFF'S EXHIBIT





5


Champlin's Proposed Marina & Perimeter Limit
from Application (Page 52) and Applicant's Full Exhibit #16
ACOE Mooring Field E
145 feet
85 feet
N
0 100 200 300 400 500
Feet
For illustration purposes only



Land
Trust
Exhibit K



4


CRMC Subcommittee Recommendation
ACOE Mooring Field E
137'
170'
197'
structure area
25' vessels allowed
rocks
N
0 100 200 300 400 500
Feet
For illustration purposes only

From Application package Received 21 March 2003.



5


Alternative Plan
ACOE Mooring Field E
200 foot channel
250 foot channel
parallel to property
line extension
with 50 foot offset
100 foot extension
N
0 100 200 300 400 500
Feet
For illustration purposes only


Modified Mooring Field E
200 foot channel
250 foot channel
100 foot extension
parallel to property
line extension
with 50 foot offset
N
0 100 200 300 400 500
Feet
For illustration purposes only

**Dan Goulet**

---

**From:** Dan Goulet [dgoulet@crmc.state.ri.us]
**Sent:** Tuesday, October 25, 2005 2:49 PM
**To:** 'madelman@gov.state.ri.us'
**Subject:** Champlins 1 of 5
**Attachments:** exist perim.pdf

Mark

Had to break this up due to state email system

Danni R. Goulet, PE
Dredging Coordinator
Coastal Resources Management Council
4808 Tower Hill Road
Wakefield, RI 02879

(401) 783-3370
fax (401) 783-3767

**Dan Goulet**

---

**From:** Dan Goulet [dgoulet@crmc.state.ri.us]

**Sent:** Tuesday, October 25, 2005 2:49 PM

**To:** 'madelman@gov.state.ri.us'

**Subject:** Champlins 2 of 5

**Attachments:** overview.pdf

Danni R. Goulet, PE
Dredging Coordinator
Coastal Resources Management Council
4808 Tower Hill Road
Wakefield, RI 02879

(401) 783-3370
fax (401) 783-3767

**Dan Goulet**

---

**From:** Dan Goulet [dgoulet@crmc.state.ri.us]
**Sent:** Tuesday, October 25, 2005 2:50 PM
**To:** 'madelman@gov.state.ri.us'
**Subject:** Champlins 3 of 5
**Attachments:** proposed.pdf

Danni R. Goulet, PE
Dredging Coordinator
Coastal Resources Management Council
4808 Tower Hill Road
Wakefield, RI 02879

(401) 783-3370
fax (401) 783-3767

**Dan Goulet**

---

**From:** Dan Goulet [dgoulet@crmc.state.ri.us]
**Sent:** Tuesday, October 25, 2005 2:50 PM
**To:** 'madelman@gov.state.ri.us'
**Subject:** Champlins 4 of 5
**Attachments:** subcom recomendation.pdf

Danni R. Goulet, PE
Dredging Coordinator
Coastal Resources Management Council
4808 Tower Hill Road
Wakefield, RI 02879

(401) 783-3370
fax (401) 783-3767

**Dan Goulet**

---

**From:** Dan Goulet [dgoulet@crmc.state.ri.us]
**Sent:** Tuesday, October 25, 2005 2:51 PM
**To:** 'madelman@gov.state.ri.us'
**Subject:** Finally 5 of 5 Champlins
**Attachments:** alternative proposal.pdf

Danni R. Goulet, PE
Dredging Coordinator
Coastal Resources Management Council
4808 Tower Hill Road
Wakefield, RI 02879

(401) 783-3370
fax (401) 783-3767

rinted from projo.com



projo.com
The Providence Journal

# ̲imited marina expansion endorsed

**'he Coastal Resources Management Council will rule on its subcommittee's recommendation egarding Block Island in about a month.**

**1:00 AM EDT on Tuesday, October 25, 2005**

**'Y PETER B. LORD**
**'ournal Environment Writer**

:AST PROVIDENCE -- No one seemed pleased yesterday when a special panel of the Coastal Resources Aanagement Council voted 3-1 to recommend granting Champlin's Marina about two thirds of the new docks it nitially proposed more than two years ago.

'he recommendation includes a number of special requirements for the marina, including a fee of $50,000 to be ›aid by the marina in exchange for taking over several acres of public trust waters -- a first for Rhode Island.

'aul Lemont, chairman of the CRMC subcommittee, cast the one dissenting vote. He argued for much less :xpansion.

;econds after the vote at East Providence City Hall, CRMC Chairman Michael Tikoian said he was "totally lisappointed" and that when the matter comes to the full council in another month or so, he would support .emont's much more limited expansion scheme.

3lock Islanders, who fought to stop any expansion, walked away angrily.

'The subcommittee made a mistake today in not protecting the public resource," said Christopher D'Ovidio, awyer for the Conservation Law Foundation. "Compromise just means a slow giving away of our resources."

'oseph Grillo, Champlin's owner, refused comment. His lawyer, Robert D. Goldberg, said at least the ;ubcommittee carefully weighed all the evidence.

Told that several council members plan to overrule the subcommittee and endorse a much smaller expansion, 3oldberg shook his head and said, "My research tells me the full council has never overruled a subcommittee."

'That is just not true," said CRMC Executive Director Grover Fugate. He said he could recall more than one ›ccasion when a council overruled a subcommittee.

Disagreement has fueled the controversy over the expansion plans ever since Grillo presented them to the town nore than two years ago. With neither side willing to compromise, the proposal went to the subcommittee which held 22 hearings and gathered 3,075 pages of testimony.

The subcommittee was free to approve, reject or offer a compromise plan. Its vote is strictly advisory to the full :ouncil, which is also free to make a full range of decisions.

emont and the other three subcommittee members all spoke about the difficulty of making the right decision in is case.

ver repeated objections from Goldberg, the subcommittee viewed slides showing the relationship between the arina and the town's mooring field.

urrently the triton-shaped piers reach into the pond to within 370 feet of the town mooring field. When hamplin's moors 165-foot yachts perpendicular to the outermost pier, the distance between the docks and the ooring fields is 195 feet.

hamplin's proposal would extend nearly 4,000 feet of new piers and floating docks an additional 240 feet into ie pond, covering four acres of public waters.

Jnder the plan, the new piers would be as close as 85 feet to the mooring field. And there would be no assageway between the two if Champlin's allowed a 165-foot vessel to be moored perpendicular to the piers.

emont said there was no right or wrong in the application.

You could make a case that the entire application is justified. You could argue that it all be denied," he said. "I vould be comfortable with either one."

Based on all he heard, and on that fact that the town said at one point it could accept an expansion extending 00 feet into the pond, Lemont said that 100 feet would be his limit too.

Then he spelled out a series of stipulations. Lemont proposed exacting contributions to a fund to monitor and estore Great Salt Pond. He suggested dimming the marina's lights and requiring it to continue providing arbage, launch service and pump-outs to boaters. He also suggested banning perpendicular, or so-called Med-noorings.

The other three committee members generally agreed with his stipulations, and added a few more. But all three nsisted on splitting the difference between the town and Champlin's and allowing expansion of 170 feet into the ond.

Gerald P. Zarrella Sr., a builder who lives much of the year on the island, said he realized the committee's lecision would be put under a microscope by Rhode Islanders. He didn't want to make a mistake, he said. But he evidence convinced him the case was not one of water quality, it was based on aesthetics.

Jerry Sahagian, a Realtor, said he agreed with most of Lemont's assertions. But he said one of the opponents' witnesses acknowledged that a 200-foot expansion would be viable. So he favored the 170-foot compromise.

Thomas Ricci, a lawyer who said he makes his living mediating and arbitrating disputes, said he respected witnesses at a recent hearing who said they can't afford to buy homes on Block Island so their only access to the island is by boat.

Zarrella tried to persuade Lemont to join the three favoring the 170-foot expansion, but he refused.

Lemont succeeded in persuading Zarrella in joining him to support the fees. Most other states, he said, require payments from those who are permitted to use public trust lands.

The subcommittee also agreed to allow nine additional moorings at the nearby town mooring field, to require

amplin's to install a new bathroom on its main pier and to bar the marina from rafting boats beyond the rina perimeters.

other council member who observed the meeting, David Abedon, said he hasn't read the full manuscript, but favors a smaller expansion.

at suggests there are three votes for 170 feet, and three for less. That may leave the final decision with the ar remaining council members: Joseph Shekarchi, Neill Gray, Raymond Coia, and Michael Sullivan, director the state Department of Environmental Management.

---

line at: http://www.projo.com/news/content/projo_20051025_champ25.1685526.html