UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHAMPLIN'S REALTY ASSOCIATES | : | |
| | : | |
| v. | : | C.A. No. 06-135 ML |
| | : | |
| DONALD L. CARCIERI, Governor of the State of Rhode Island, KENNETH K. MCKAY, IV, Chief of Staff to the Governor of the State of Rhode Island and John Does 1 through 5 | : | |

**DEFENDANTS' REPLY MOTION TO**
**CHAMPLIN'S OPPOSITION TO SUMMARY JUDGMENT**

Defendants Governor Donald L. Carcieri and Kenneth K. McKay, IV, hereby move to reply to the Plaintiff's Opposition to their Motion for Summary Judgment. In support of their Reply, the Defendants rely on the Reply Memorandum filed contemporaneously herewith.

Respectfully submitted,

DEFENDANTS
By their Attorney,

*/s/ Claire Richards*
Claire Richards (#4057)
Special Counsel
State House, Room 119
Providence, RI 02903
(401) 222-8114
(401) 222-8091 (fax)
crichards@gov.state.ri.us

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of September, 2006, I electronically filed the within *Defendants' Reply Motion* with the United States District Court for the District of Rhode Island via the ECF system. Additionally, a copy is sent electronically via the ECF system to Robert D. Goldberg, Esq. at rgoldberg@goldberglawoffices.com.

*/s/ Claire Richards*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHAMPLIN'S REALTY ASSOCIATES | : | |
| | : | |
| v. | : | C.A. No. 06-135 ML |
| | : | |
| DONALD L. CARCIERI, Governor of the State of Rhode Island, KENNETH K. MCKAY, IV, Chief of Staff to the Governor of the State of Rhode Island and John Does 1 through 5 | : | |

**DEFENDANTS' REPLY MEMORANDUM TO CHAMPLIN'S OPPOSITION TO SUMMARY JUDGMENT**

In its Opposition to the Defendants' Motion for Summary Judgment, Champlin's has failed to rebut the summary judgment arguments made by the Governor and his Chief of Staff. Even viewing the facts in a light most favorable to Champlin's, it simply cannot demonstrate the existence of any genuine issue for trial in this case. The Defendants provide the following point-by-point refutation of Champlin's Opposition to their Motion for Summary Judgment.

*1. The Plaintiff's Failure to State a Claim*

Champlin's protests that "[i]t cannot be disputed that plaintiff was entitled to a fair hearing and did not get one." Opposition at 4. Of course, CRMC hotly contests the assertion that Champlin's did not get a fair hearing and that dispute is being determined by the Superior Court right now. Regardless, the fairness *vel non* of the CRMC hearing process simply cannot form the basis of a federal court complaint against the Governor or his Chief of Staff, neither of whom are members

of the CRMC. Moreover, the existence of an ongoing legal challenge to CRMC's denial of Champlin's expansion defeats the argument that Champlin's has no adequate remedy.

Champlin's also protests that the alleged conduct of the Governor and McKay "shocks the conscience" and is, therefore, actionable. The First Circuit says otherwise. Precisely the conduct being complained of by Champlin's here has been held by the First Circuit *not* to shock the conscience for due process purposes. *Nestor Colon Media & Sucesores, Inc. v. Custodio,* 964 F.2d 32, 47 (1st Cir. 1992) (rejecting the argument that political pressure allegedly exerted by Governor over Planning Board shocked the conscience sufficient to give rise to federal due process claim). That determination is dispositive of the allegations made against the Governor and McKay.

2. *The Plaintiff's Failure to Plead the Essential Elements of Malicious Interference with Contractual Relations*

Champlin's asserts that it has adequately pleaded a claim of malicious interference with prospective contractual relations. The elements of that tort are: 1) the existence of a business relationship or expectancy; 2) that the defendant had knowledge of that relationship or expectancy; 3) an intentional act of interference by the defendant; 4) that the act of interference caused harm to the plaintiff; and 5) that the plaintiff suffered damages. *New England Multi-Unit Housing Laundry Assoc.,* 893 F. Supp. 1180, 1193 (D.R.I. 1995) citing *Mesolella v. City of Providence,* 508 A.2d 661, 669 (R.I. 1986). Champlin's has not set forth in its Complaint the first element of that tort: the existence of a business relationship or

the expectancy of it. Without that fundamental predicate, its claim cannot survive summary judgment.

3. *Rhode Island's Anti-SLAPP Statute Applies to the Conduct Set Forth in the Complaint*

Champlin's asserts that the Governor and McKay's conduct is not afforded immunity under the Anti-SLAPP statute because 1) their conduct does not involve the "valid exercise of the constitutional right[] of . . . freedom of speech" and 2) they have not complied with the "procedural requirements of the [Anti-SLAPP] statute." Opposition at 7. Both assertions are meritless.

First, the allegations set forth in Champlin's Complaint clearly implicate the Governor and McKay's speech. The Complaint says that the Governor and McKay "contacted" members of CRMC and "convinced" certain members to vote their way. Amended Complaint at ¶ 21. It asserts that the Governor and McKay "spoke" with Chairman Tikoian and "engaged in more than one conversation with Michael Tikoian in order to work together to defeat Plaintiff's application." Amended Complaint at ¶ 22. In its request for injunctive relief, Champlin's seeks to enjoin the Governor and McKay from "discussing [CRMC members'] vote and influencing their vote." Amended Complaint at Count I, ¶ 4. Indeed, the *only* conduct complained of in the Complaint is the Governor and McKay's alleged speech to members of the CRMC. Even Champlin's Opposition characterizes the Governor and McKay's conduct as speech. *See* Opposition at 7 (alleging that "communications" between the Governor and his staff and members of the CRMC were unlawful). Such "communications," "discussions" and "conversations"

constitute speech under the Anti-SLAPP statute and are, therefore, immune from civil claims like the ones brought in this action.

Second, there has been no failure by the Governor and McKay to abide by the procedural requirements of the Anti-SLAPP statute. Nor does Champlin's really allege any. It merely restates that the allegations against the Defendants do not involve speech and so the statute does not apply. As discussed above, a simple review of the allegations demonstrate that they are exclusively dedicated to attacks on the Governor and McKay's speech.

Finally, in a footnote, Champlin's claims that the protections of the Anti-SLAPP statute are not available to "state actors." Opposition at 7, n. 2. Of course, there is nothing in the Anti-SLAPP statute that places such a limitation on its protections. Moreover, the application of the statute is entirely consistent with the common law immunity afforded to public officials for their discretionary acts.

*4. Taking a Position on the Marina Expansion and Communicating it to Others is a Fundamental Part of the Governor's Job*

Champlin's argues that the defendants lack qualified immunity because speaking out about its application for a marina expansion was not part of their discretionary functions. Opposition at 10.

Champlin's is wrong for a host of reasons. First, the Governor, through the Department of Environmental Management, is charged with safeguarding the State's natural resources, of which the Great Salt Pond is a notable part. Second, the Governor appoints members of the CRMC and so also plays a role in the preservation of the coastal zone. Third, the proposed marina expansion would

convert to private use more than three acres of public trust land owned by the people of Rhode Island. Taking a position on that conversion and communicating it to others is a necessary part of any Governor's job description. *See, e.g., Aspen Exploration Corp., v. Sheffield,* 739 P.2d 150, 155 (Alaska 1987) (holding that the Governor of Alaska's remarks about offshore prospecting in Cook Inlet – even if defamatory – were well within the scope of the Governor's chief executive duties and were, thus, protected by official immunity). Moreover, the significant number of letters sent to the Governor concerning the proposed expansion suggests, at the very minimum, that the public looks to the Governor to take a leadership position with regard to matters of public concern like the proposed expansion and its usurpation of public trust lands. Indeed, both the Lieutenant Governor and Senator Chafee also issued press releases condemning the expansion suggesting that, as a political matter, the obligation to stake out a position is not narrowly confined to developers and abutters.

For the foregoing reasons, this Court should grant the Defendants' motion for summary judgment as to all counts.

Respectfully submitted,

DEFENDANTS
By their Attorney,

*/s/ Claire Richards*

Claire Richards (#4057)
Special Counsel
State House, Room 119
Providence, RI 02903
(401) 222-8114
(401) 222-8091 (fax)
crichards@gov.state.ri.us

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of September, 2006, I electronically filed the within *Defendants' Reply to Champlin's Opposition* with the United States District Court for the District of Rhode Island via the ECF system. Additionally, a copy is sent electronically via the ECF system to Robert D. Goldberg, Esq. at rgoldberg@goldberglawoffices.com.

*/s/ Claire Richards*