UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHAMPLIN'S REALTY
ASSOCIATES

v. C.A. No. 06-135

DONALD L. CARCIERI, GOVERNOR
OF THE STATE OF RHODE ISLAND,
KENNETH K. McKAY IV, CHIEF OF STAFF
TO THE GOVERNOR OF THE STATE OF RHODE
ISLAND and JOHN DOES, 1 through 5

# MEMORANDUM AND ORDER

This case was originally filed by Champlin's Realty Associates ("Plaintiff") in state court and was removed by Defendants to this Court. Count I of the complaint requests declaratory and injunctive relief alleging that the behavior of Defendants, Donald L. Carcieri, the Governor of the State of Rhode Island, and Kenneth K. McKay IV, the Governor's Chief of Staff, ("Defendants"), violated Plaintiff's right to due process and equal protection under the federal and state constitutions. Count II of the complaint alleges a violation of 42 U.S.C. § 1983. Count III of the complaint alleges a state-law based tort claim. Defendants have moved for summary judgment on all counts in the complaint.

## I. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the pertinent evidence is such that a rational factfinder could render a verdict in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Id. Once the movant has made the requisite showing, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Continental Cas. Co. v. Canadian Universal Ins. Co., 924 F.2d 370 (1st Cir. 1991).

## II. Facts

Between 2004 and 2006, Plaintiff had its application before the Rhode Island Coastal Management Council ("CRMC") for an expansion of its existing marina facility in the Great Salt Pond located in New Shoreham on Block Island. Over the course of two years, the requested expansion was the subject of twenty-three public hearings before a subcommittee of the CRMC. The planned expansion was also the subject of spirited public debate. The expansion of Plaintiff's marina, if permitted by the CRMC, would have converted more than three acres of public trust land within the Great Salt Pond to private, commercial use. On October 24, 2005, a subcommittee of the CRMC voted three to one to recommend approval of Plaintiff's application for expansion ("application") with some modifications.

In the weeks preceding a vote by the full CRMC on Plaintiff's application, numerous

environmental groups and several politicians, including Governor Donald L. Carcieri, issued press releases voicing their opposition to the proposed marina expansion. On February 28, 2006, the CRMC deadlocked in a five-to-five vote on Plaintiff's application. Because the vote of the CRMC "was evenly divided, Plaintiff's application has not been granted . . . ." Amended Complaint at ¶ 27.

On or about March 13, 2006, Plaintiff filed its amended complaint against Defendants. Plaintiff alleges that Defendant Governor Donald L. Carcieri (1) contacted the Chairman of the CRMC and agreed to work with him to defeat the application, (2) indirectly contacted members of the CRMC over whom he had appointing authority and "improperly influenced" their vote on the application, and (3) contacted the Director of the Rhode Island Department of Environmental Management, an ex-officio member of the CRMC, to "improperly influence" his vote with the "specific intent to defeat" the application. Defendants' Statement of Undisputed Facts at ¶ 13; Amended Complaint at ¶ ¶ 20, 21, 23, 24, 25. Plaintiff also alleged that Defendant Kenneth K. McKay IV (1) directly and indirectly contacted members of the CRMC and convinced certain members to vote against the application, (2) spoke with the Chairman of the CRMC in order to work with the Chairman to defeat the application, and (3) contacted the Director of the Rhode Island Department of Environmental Management to "improperly influence" his vote with the "specific intent to defeat" the application. Defendants' Statement of Undisputed Facts at ¶ 14; Amended Complaint at ¶ ¶ 21-25.

## III. Procedural Due Process[1]

Although the complaint does not specify whether Plaintiff is alleging a procedural due process claim or a substantive due process claim or both, at oral argument on the motion for summary judgment, Plaintiff clarified that it is making both claims. To establish a procedural due process violation, Plaintiff must first identify a protected liberty or property interest, and second, show that Defendants, acting under color of state law, deprived it of that interest without constitutionally adequate process. Aponte-Torres v. University of Puerto Rico, 445 F.3d 50, 56 (1st Cir. 2006). To establish a property interest in a benefit, Plaintiff must show more than an abstract need or a unilateral expectation of it, instead Plaintiff must have a legitimate claim of entitlement to it. Macone v. Town of Wakefield, 277 F.3d 1, 9 (1st Cir. 2002).

At oral argument Plaintiff identified the property interest at stake here as a "right" to a fair hearing. In support of its claim, Plaintiff cites language from DePoutot v. Raffaelly, 424 F.3d 112 (1st Cir. 2005). Plaintiff's reliance on DePoutot, however, is misplaced. DePoutot does not stand for the proposition that Plaintiff has a property interest in a right to a fair hearing. Plaintiff appears to hang its procedural due process claim on the DePoutot court's pronouncement that procedural due process "ensures that government, when dealing with private persons, will use fair procedures." Id. at 118. Plaintiff argues that this language creates some form of constitutionally protected property interest in a fair haring.

[1]In count I of the complaint, Plaintiff alleges that Defendants' conduct violated both the federal and state constitution. Rhode Island's constitutional protections of due process and equal protection are similar to those provided under the Fourteenth Amendment of the United States Constitution. Olsen v. Town of Westerly, No. C.A. 03-245 ML, 2006 WL 997716 (D.R.I. April 17, 2006). The Court's analysis applies to claims under both the United States and Rhode Island constitutions.

Plaintiff's argument is misguided. In order to prevail, Plaintiff must first show a protected property interest and then an unconstitutional deprivation. Aponte-Torres, 445 F.3d at 56. Plaintiff has failed to point this Court to any authority that would suggest that it has a constitutionally recognized property interest in a "right to a fair hearing."

The CRMC subcommittee made a decision to recommend approval of the application, with some modifications. That decision, however, was just that, a *recommendation* to the full CRMC. Under Rhode Island law, the full CRMC has broad discretion to adopt, modify, or reject the subcommittee's findings of fact and/or conclusions of law. See R.I. Gen. Laws § 46-23-20.4(a) (providing that the "council may, in its discretion, adopt, modify or reject" the findings of fact and/or conclusions of law); see also R.I. Gen. Laws § 46-23-20.1(e). That discretionary authority "negates any entitlement" to approval of the application. See Macone, 277 F.3d at 9. Therefore, it follows, that Plaintiff could not have a legitimate claim of entitlement to approval of its application. Consequently, because Plaintiff has failed to show a property interest, its procedural due process claim fails as a matter of law.

Furthermore, even if Plaintiff established that it had some form of protected property interest, its participation in the post-deprivation process in state court would defeat its claim here. See Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 40 (1st Cir. 1992). At oral argument, both parties informed the Court that Plaintiff's application denial is currently on appeal before the Rhode Island Superior Court pursuant to the Rhode Island Administrative Procedures Act. Plaintiff has availed itself of the procedural protections provided by state law to challenge the claimed abuses in the application process.

## IV. Substantive Due Process

In order to prevail on its substantive due process claim, Plaintiff must also show a deprivation of a protected interest in life, liberty, or property. Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006). Based upon the property interest analysis above, Plaintiff's substantive due process claim also falls short because Plaintiff has failed to show that it has a constitutionally protected interest. However, even if Plaintiff had a protected property interest, its substantive due process claim would still fail because the alleged behavior of Defendants does not reach the "conscience-shocking" conduct threshold necessary to sustain a substantive due process claim. Id. at 32. "Where . . . a plaintiff's substantive due process claim challenges the specific acts of a state officer, the plaintiff must show both that the acts were so egregious as to shock the conscience and that they deprived him of a protected interest in life, liberty, or property."[2] Id.

There is no precise formula to determine if certain executive action is sufficiently shocking to trigger constitutional protections. Id. The inquiry involves "a comprehensive analysis of the attendant circumstances before any abuse of official power is condemned as conscious-shocking." DePoutot, 424 F.3d at 119. In order to be conscious shocking, the conduct must be, at the very least, "extreme and egregious . . . or . . . truly outrageous, uncivilized and intolerable." Pagan, 448 F.3d at 32 (internal quotation marks and citation omitted). Violations of state law, even those resulting from bad faith, do not invariably rise to the level of conscience-

---

[2]In cases involving executive branch action, courts should first determine whether the official's conduct shocks the conscience. DePoutot, 424 F.3d at 118. If that question is answered in the affirmative, only then should a court examine what, if any, constitutional right may have been violated. Id. Notwithstanding this Court's conclusion that Plaintiff has not show a constitutionally protected property interest, the Court follows the First Circuit's lead and reviews the conscience-shocking element of the substantive due process claim to complete the analysis.

shocking conduct. Id. The conduct must be stunning, finding "its roots in conduct intended to injure . . . unjustifiable by any government interest." DePoutot, 424 F.3d at 119 (internal quotation marks and citation omitted).

Plaintiff asserts, without much elaboration, that Defendants behavior "shocks the conscience." Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 4. Viewing the facts in the light most favorable to Plaintiff, its claim is that Defendants, through direct and indirect contact with CRMC members, "strong-armed" those members into voting against Plaintiff's application. The complaint alleges that Defendants contacted and "improperly" influenced members of the CRMC and convinced those members to vote against the application. In support of the allegations, Plaintiff submits affidavits of three members of the CRMC. The Court has reviewed the affidavits and concludes that the information contained in the affidavits adds little to Plaintiff's allegations already summarized above.[3]

Courts should be reluctant to expand the concept of substantive due process. Pagan, 448 F.3d at 33. "Substantive due process, as a theory for constitutional redress, has . . . been disfavored, in part because of its virtually standardless reach." Nestor Colon, 964 F.2d at 45. Plaintiff ignores the significant import of the particular environment, i.e., local discretionary permitting, in which this claim arose. The First Circuit has held with "regularity bordering on

---

[3]Plaintiff has also submitted other material in support of its objection to the motion for summary judgment. These materials, however, have not been properly authenticated for consideration at the summary judgment stage. See generally, D.R.I. LR Cv 56; see also Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000) ("Documents supporting or opposing summary judgment must be properly authenticated. . . . To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)." Id. (internal quotation marks and citation omitted).

the monotonous" that the doctrine of substantive due process may not, in the ordinary course, be invoked to challenge discretionary permitting determinations of state or local decision makers. Pagan, 448 F.3d at 33. The door is, however, "slightly ajar for . . . truly horrendous situations. . . ." Id. (internal quotation marks and citation omitted). The "threshold for establishing the requisite 'abuse of government power' is a high one indeed." Nestor Colon 964 F.2d at 45. The First Circuit has rejected substantive due process claims in circumstances similar to Plaintiff's allegations against Defendants. Nestor Colon, 964 F.2d 32 (allegations of political interference by several politicians, including the Governor of Puerto Rico, with land use permitting process); see generally Pagan, 448 F.3d 16 (allegations that the Governor of Puerto Rico, through others, exerted undue influence to improperly influence the decision of a government lender to reject a loan).

Viewing all facts in the light most favorable to Plaintiff, and drawing all reasonable inferences therefrom in favor of Plaintiff's claims, the Court finds that Defendants' behavior does not reach the high threshold of "truly horrendous" behavior necessary to support a substantive due process claim. Pagan, 448 F.3d at 33 (internal quotation marks and citation omitted).

## V. Equal Protection

Defendants have moved for summary judgment on all counts in the complaint. Plaintiff's memorandum supporting its objection to Defendants' motion does not address Defendants' arguments on Plaintiff's equal protection claim. "[A]n issue raised in the complaint but ignored at summary judgment may be deemed waived." Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667,

678 (1st Cir. 1995). The Court finds that by ignoring Defendants' argument on equal protection, Plaintiff has waived that claim.

Even if Plaintiff had not waived its equal protection claim, it would not have passed the summary judgment hurdle. "[O]nly in extreme circumstances will a land-use dispute give rise to an equal protection claim." Torromeo v. Town of Freemont, 438 F.3d 113, 118 (1st Cir.), cert. denied, 75 U.S.L.W. 3036 (2006) (internal quotation marks and citation omitted). In order to succeed on an equal protection claim, Plaintiff must show (1) it was treated differently than other similarly situated applicants, and (2) the "differential treatment resulted from a gross abuse of power, invidious discrimination, or some other fundamental procedural unfairness." Pagan, 448 F.3d at 34. The record here is devoid of any evidence that Plaintiff was treated differently than any other similarly situated applicant before the CRMC.

## VI. Interference with Prospective Contractual Relations[4]

The complaint includes a claim for "malicious interference with prospective business expectations." Amended Complaint Count III. Plaintiff cites L.A. Ray Realty v. Town Council of Town of Cumberland, 698 A.2d 202 (R.I. 1997), in support of its claim. The L.A. Realty case summarized the elements of the tort of interference with prospective contractual relations. Id. at 207. In order to recover under this theory, Plaintiff must show (1) existence of a business relationship or expectancy, (2) knowledge by the interferor of the relationship or expectancy, (3) an intentional act of interference, (4) proof that the interference caused the harm, and (5)

[4]Defendants have requested that the Court decide the state law claim. The Court concludes that the state law claim arises from the same core facts as the federal claims. Learnard v. Inhabitants of the Town of Van Buren, 182 F. Supp. 2d 115 (D. Me. 2002). The Court, therefore, exercises its supplemental jurisdiction over the state law cause of action. Id.; see also 28 U.S.C. § 1367.

damages. Id.

Defendants argue that there is no evidence in the record of the necessary predicate to maintain the interference claim; i.e., the existence of a business relationship or the expectancy of one. The extent of Plaintiff's argument on this issue is that it "submits that it has adequately pleaded this count." Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 5.

Plaintiff response is wholly inadequate. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Having combed the summary judgment record, the Court finds that there is no evidence of the existence of a business relationship or the expectancy of one. As such, as a matter of law, Plaintiff's interference with prospective contractual relations' claim fails.

As a result of the Court's disposition of Plaintiff's claims, the Court need not address Defendants' immunity arguments.

**VII. Conclusion**

For the reasons set forth herein, Defendants' motion for entry of summary judgment is GRANTED.

SO ORDERED

Mary M. Lisi
Mary M. Lisi
United States District Judge
October 12, 2006